FRED CHRISTENSEN, Appellant, *v.* MORSE DRY DOCK AND REPAIR COMPANY, Respondent.

Second Department, March 19, 1926.

Workmen's compensation — ships and shipping — action to recover for injuries suffered by plaintiff when he was repairing steamship lying in navigable waters in New York harbor — defendant contends that court is without jurisdiction because of waiver signed by plaintiff electing to be subject to Workmen's Compensation Law and waiving rights in any admiralty court or courts of this State — validity of waiver based on Workmen's Compensation Law, § 113, authorizing same — said alleged waiver is ineffective to deprive State court of jurisdiction of subject-matter — Federal Judicial Code, § 24, subd. 3; Id. § 256, subd. 3, continuing Judiciary Act of 1789, § 9, applied.

In an action by the plaintiff to recover damages for injuries suffered while he was repairing a steamship that was lying in the navigable waters in New York harbor, a defense that the court is without jurisdiction based on a waiver executed by the plaintiff, to the effect that he elected and agreed to be subject to the provisions of the Workmen's Compensation Law and that he waived any right or rights he might have in any court of admiralty or courts of this State, which waiver apparently was executed under the authority of section 113 of the Workmen's Compensation Law, is not good, for the admiralty jurisdiction is exclusive except that subdivisions 3 of sections 24 and 256 of the Federal Judicial Code (formerly Judiciary Act of 1789, § 9) save to suitors in all cases the right of a common-law remedy, where the common law is competent to give it.

The saving clause in the Judiciary Act of 1789 and the Judicial Code does not provide for a jurisdiction unknown to the common law, and since the Workmen's Compensation Law is not an amendment to the common law but the establishment of heretofore unknown obligations, compensations and methods of procedure, all different from and in place of those afforded by the common law, it cannot be substituted for the exclusive jurisdiction of the Federal courts on the ground that it comes within the saving clause of the Judiciary Act of 1789 and the Judicial Code.

The option provision of section 113 of the Workmen's Compensation Law if utilized by employer and employee is effective to divest the Federal courts of jurisdiction by substituting therefor the jurisdiction of a State tribunal exercising functions unknown to the common law and is effective, also, to work a material change in the maritime law by substituting for the rights and remedies there recognized and administered, new rights and remedies unknown to the common law and not within the scope of the maritime law, and the jurisdiction of which the Federal courts are thus divested is jurisdiction of the subject-matter and this may not be done either directly by compulsory legislation or indirectly, as in this case, through the medium of optional methods.

Furthermore, it is a well-settled principle of law that jurisdiction of the subject-matter may not be conferred upon a tribunal by consent.

Accordingly, where a plaintiff claiming a personal injury to have resulted from what is known as a maritime tort, resorts to the courts of this State for the purpose of having his right of action determined pursuant to the laws fixed by maritime jurisprudence, he cannot be ousted because of an agreement

voluntarily entered into by him to substitute the Workmen's Compensation Law in place and stead of his common-law remedy saved to him by the Judiciary Act of 1789 and the Federal Judicial Code.

LAZANSKY, J., dissents, with memorandum.

APPEAL by the plaintiff, Fred Christensen, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 8th day of June, 1925, upon the dismissal of the complaint at the close of the plaintiff's case.

*James C. Van Siclen* [*William S. Butler* and *James A. Gray* with him on the brief], for the appellant.

*Courtland Palmer,* for the respondent.

KAPPER, J. The question involved in this appeal is stated at the outset of the respondent's brief as follows:

" The respondent concedes that the employment of the plaintiff, appellant, was one which would come within the jurisdiction of the admiralty law. But the respondent contended at Trial Term that the plaintiff had by his voluntary act waived his right to sue in admiralty, and had agreed to become subject to the Workmen's Compensation Law of the State of New York."

The pleadings admit that the defendant was engaged in the business of repairing steamships in and about the harbor of New York; that prior to January 2, 1925, the defendant made a contract with the owner of the steamship *President Arthur* to perform " certain repair work " upon said vessel; that on January 2, 1925, said steamship was lying at the plant of the defendant in the navigable waters of New York harbor; and that on said day plaintiff was in the employ of the defendant and engaged in the discharge of his duties pursuant to his employment upon said steamship. Further allegations (which the answer denied) were that while in the performance of his work, plaintiff was caught by a rope or tackle which had been attached to an iron or steel bar, resulting in his being dragged from the ship " into the navigable waters of New York Harbor " and thereby injuring him; and that his injuries were due to the negligence of the defendant in failing to provide him with competent fellow-workmen, a safe place to work, proper appliances, and omission to promulgate and enforce proper regulations for the conduct of the work. There was some evidence that the deck of the vessel was icy, that the rope that was being used to move the iron was wet from snow, and that there was a customary manner of moving and lowering this particular kind of iron by means that were not followed. However, no question is presented as to the sufficiency of the evidence to establish a cause of action, the defendant relying wholly upon the claim

that our Supreme Court had no jurisdiction of the cause of action because of the following paper, in evidence, admittedly signed by plaintiff and defendant before plaintiff entered into the employ of the defendant:

                                        " BROOKLYN, N. Y. 1 /21, 1924.

" I, FRED CHRISTENSEN, residing at 270–48 Street, Brooklyn, N. Y. while in the employ of MORSE DRY DOCK & REPAIR CO., hereby elect and agree to be subject to the provisions of the Workmen's Compensation Law of the State of New York, and in so electing and agreeing, I waive any right to myself, my heirs, assignees or executors in any court of admiralty or courts of the State limiting whatever rights I may have to be governed and settled by the provisions of the said Workmen's Compensation Law.

" THE MORSE DRY DOCK & REPAIR Co. will comply with the provisions of the Workmen's Compensation Law and agrees to secure the payment of compensation to this employee in accordance with the provisions of the Workmen's Compensation Law, State of New York."

The learned trial justice dismissed the complaint at the close of the plaintiff's case upon the authority of *Holland* v. *Atlantic Stevedoring Co.* (210 App. Div. 129), and in the course of an oral opinion furthermore relied upon the affirmance of the *Holland* case by the Court of Appeals (239 N. Y. 605). While our decision, adopting the opinion of the Special Term, holds that plaintiff's " contracting to submit to the Workmen's Compensation Law, where his employer had likewise waived its right by contract and also submitted, must be given full force and effect, as in law a voluntary act of both of them," the affirmance by the Court of Appeals proceeded upon an entirely different ground, namely, that the facts were " sufficient to show an accord and satisfaction or a release by a payment in full," thus leaving the question now presented open for decision.

We are also informed that the Appellate Division, Third Department, in *McEntee* v. *City of New York* (207 App. Div. 878), by a unanimous affirmance, but without opinion, of an award made by the State Industrial Board, have decided the validity of a like waiver to that involved here, but we find that the appeal in that case to the Court of Appeals was dismissed, without opinion (237 N. Y. 523, decided November 27, 1923), again leaving us without an authoritative declaration of the law by our highest State court. The dismissal of the appeal in the *McEntee* case by the Court of Appeals was without the benefit of the decision of the United States Supreme Court in *State of Washington* v. *Dawson & Co.* (264 U. S. 219, decided February 25, 1924). The *State of Washing-*

*ton* case gives a review of the various decisions in that court showing that from the time *Southern Pacific Co.* v. *Jensen* (244 U. S. 205) was decided, there had been efforts made by Congress to permit the application of various State workmen's compensation laws to cases involving maritime torts.    It was pointed out that in *Knicker-bocker Ice Co.* v. *Stewart* (253 U. S. 149) the act of Congress of 1917 (40 U. S. Stat. at Large, 395, chap. 97) which undertook to amend the provisions of subdivisions 3 of sections 24 and 256 of the Judicial Code (36 U. S. Stat. at Large, 1091; Id. 1160, 1161), which saved to suitors in all civil cases of admiralty and maritime jurisdiction " the right of a common-law remedy where the common law is competent to give it," by adding the words " *and to claimants the rights and remedies under the Workmen's Compensation Law of any State,*" was construed and held " beyond the power of Congress " to enact.    It was further pointed out that the act of Congress of June 10, 1922 (42 U. S. Stat. at Large, 634, chap. 216), by excepting the *master* and *crew* of a vessel from the operation of the Workmen's Compensation Law of any State, was " wholly insufficient to meet the objections to such enactments heretofore often pointed out."    And it was added by Mr. Justice McREYNOLDS, writing for the court (p. 227): " Without doubt Congress has power to alter, amend or revise the maritime law by statutes of general application embodying its will and judgment.    This power, we think, would permit enactment of a general Employers' Liability Law or general provisions for compensating injured employees; *but it may not be delegated to the several States.*    The grant of admiralty and maritime jurisdiction looks to uniformity; otherwise wide discretion is left to Congress."

Whether the Workmen's Compensation Law of the State of Washington was *optional* (sometimes called elective) or *compulsory* does not appear from the opinion of the United States Supreme Court.

Section 113 of the New York Workmen's Compensation Law (Laws of 1922, chap. 615) is as follows:

" § 113.  Interstate commerce.  The provisions of this chapter shall apply to employers and employees engaged in intrastate, and also interstate or foreign commerce, for whom a rule of liability or method of compensation has been or may be established by the Congress of the United States, only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce, provided that awards according to the provisions of this chapter may be made by the Board in respect of injuries subject to the admiralty or other Federal laws in case the claimant, the employer and the insurance

carrier waive their admiralty or interstate commerce rights and remedies, and the State insurance fund or other insurance carrier may assume liability for the payment of such awards under this chapter."

Does the act "contravene the essential purpose of or work material prejudice to the characteristic features of the general maritime law," or "interfere with the proper harmony and uniformity of that law in its international and interstate relations?"

Article 3, section 2, subdivision 1, of the United States Constitution extends the judicial power of the United States "to all cases of admiralty and maritime jurisdiction." This reference in the Constitution, as was declared by Mr. Justice BRADLEY in *The Lottawanna* (88 U. S. [21 Wall.] 558, 574), is to "The general system of maritime law which was familiar to the lawyers and statesmen of the country when the Constitution was adopted," and that it was not the intention of this provision "to place the rules and limits of maritime law under the disposal and regulation of the several States, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign States." Article 1, section 8, subdivision 18, of the Federal Constitution confers on Congress the authority to make all laws necessary to carry into execution the powers vested in the government or any department thereof by the Constitution. Pursuant to this authorization, the United States Judicial Code gives to the District Courts of the United States exclusive original jurisdiction "of all civil causes of admiralty and maritime jurisdiction," except that it saved "to suitors in all cases the right of a common-law remedy where the common law is competent to give it." (Judicial Code, § 24, subd. 3; Id. § 256, subd. 3.) What was saved "to suitors?" As I read the decisions, they uniformly hold that this saving clause does not confer upon a suitor the right to *choose* between the principles of the maritime law and the local law with respect to the determination of his rights and remedies, but simply served to confer upon him the privilege of having his rights and obligations, as sanctioned by the maritime law, administered through the medium of a State tribunal when that tribunal is competent for the purpose. (*Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372, 384; *Knickerbocker Ice Co.* v. *Stewart, supra,* 159; *The Moses Taylor,* 4 Wall. 411, 431; *Knapp, Stout & Company* v. *McCaffrey,* 177 U. S. 638, 644.) Except for the reservation the jurisdiction of the Federal courts is "exclusive," and nothing in any of the opinions of the United States Supreme Court can be pointed to in support of any theory that there could be substituted for this peculiar jurisdiction of the

District Courts and of the State courts administering jurisdiction in cases of maritime torts in accordance with maritime principles, a *forum* administering a jurisdiction wholly unknown to the common law. As was said in *Southern Pacific Co.* v. *Jensen* (*supra*, 218): " The remedy which the Compensation Statute attempts to give is of a character wholly unknown to the common law, incapable of enforcement by the ordinary processes of any court and is not saved to suitors from the grant of exclusive jurisdiction." The case last cited and all others which since then have discussed the proposition, are in no way based upon or influenced by the fact that the provisions of the New York Workmen's Compensation Law were *compulsory* as distinguished from optional. On the contrary, the decisions all seem to me to be based on the doctrine, vigorously reasserted, that the State is powerless to acquire jurisdiction over the *subject-matter involved* except through the medium of the saving clause. And the plain import of the decisions is that any statute providing for a *jurisdiction* unknown to the common law is without the domain of the saving clause, and, hence, ineffective to destroy the exclusive jurisdiction conferred upon the Federal courts by the Judiciary Act.*   In the *Chelentis Case* (*supra*) the proposition was sought to be engrafted upon the law that a seaman injured through an improvident order given by another member of the crew could institute a common-law action in a State court demanding *full* indemnity for damage sustained. It was held that the vessel owner was liable only for the maintenance, care and wages of the seaman, and that, while he could proceed to recover through the medium of a court administering common-law remedies, this did not give the seaman his election to have the vessel owner's liability measured by common-law standards instead of those prescribed by the maritime law. It will be seen that this was the converse of the proposition usually presented in seeking a recovery of damages, and yet the United States Supreme Court placed the limitation indicated upon the seaman's right of recovery upon the doctrine that " no State has power to abolish the well recognized maritime rule concerning measure of recovery and substitute therefor the full indemnity rule of the common law; " that " such a substitution would distinctly and definitely change or add to the settled maritime law; and it would be destructive of the ' uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign States.' "   (P. 382.)

---

* See Judiciary Act of 1789 (1 U. S. Stat. at Large, 76, 77), § 9, as continued by the United States Revised Statutes (§ 563, subd. 8; § 711, subd. 3) and by the United States Judicial Code (*supra*).— [REP.

It is said, however, that authority may be found for upholding an agreement of parties to resort to the forums known as Workmen's Compensation Commissions or State Industrial Boards administering workmen's compensation laws in *Grant Smith-Porter Ship Co. v. Rohde* (257 U. S. 469). I think the extent to which that case went is misunderstood by counsel. Rohde was a carpenter and doing work as such upon an entirely new vessel in course of construction and not completed at the time he suffered injury; in other words, a vessel that had never been devoted to navigation and commerce. However, the uncompleted vessel or structure was afloat in navigable waters. The accident occurred in the State of Oregon whose Workmen's Compensation Law gave an option to accept its benefits and provisions, the option consisting of a failure to notify the proper State authority when it was desired not to come under the act. This was what was said by the court (per Mr. Justice MCREYNOLDS, at p. 475): "The contract for constructing ' The Ahala ' was non-maritime, and although the incompleted structure upon which the accident occurred was lying · in navigable waters, neither Rohde's general employment, nor his activities at the time had any direct relation to navigation or commerce. *Thames Towboat Co.* v. *The Schooner ' Francis McDonald,'* 254 U. S. 242. The injury was suffered within a State whose positive enactment prescribed an exclusive remedy therefor. And as both parties had accepted and proceeded under the statute by making payments to the Industrial Accident Fund it cannot properly be said that they consciously contracted with each other in contemplation of the general system of maritime law. *Union Fish Co.* v. *Erickson,* 248 U. S. 308. Under such circumstances regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations."

The distinguished writer of that opinion had occasion subsequently in two cases to point out the limitations of the *Rohde* case. Thus, in *State of Washington* v. *Dawson & Co.* (*supra,* 226), he said: " *Grant Smith-Porter Ship Co.* v. *Rohde* was a proceeding in admiralty to recover damages from the shipbuilder for injuries which the carpenter received while working on an unfinished vessel moored in the Willamette River at Portland, Oregon. ' The contract for constructing " The Ahala " was nonmaritime, and although the incompleted structure upon which the accident occurred was lying in navigable waters, neither Rohde's general employment, nor his activities at the time had any direct relation

to navigation or commerce.' We held the matter was only of local concern and that to permit the rights and liabilities of the parties to be determined by the local law would not interfere with characteristic features of the general maritime rules. We also pointed out the conclusion was in entire accord with prior cases."

Again, in *Robins Dry Dock Co.* v. *Dahl* (266 U. S. 449, 457), where it was necessary to define the employee's' work as maritime, he said: " The alleged tort was maritime, suffered by one *doing repair work on board a completed vessel.* The matter was not of mere local concern, as in *Grant Smith-Porter Ship Co.* v. *Rohde,* 257 U. S. 469, 476, but had direct relation to navigation and commerce, as in *Great Lakes Dredge & Dock Co.* v. *Kierejewski,* 261 U. S. 479. The rights and liabilities of the parties arose out of and depended upon the general maritime law and could not be enlarged or impaired by the State statute." (Citing, amongst other cases, the *Chelentis Case, supra.*)

Concededly, the case we are now reviewing is not one of ship construction, as was the fact in the *Rohde* case, but one of ship repair after a voyage. It seems to me, therefore, that there can be no doubt about the holding in the *Rohde* case, and that it was not a decision that elective or optional provisions in a State workmen's compensation law could supersede or abrogate the administration of admiralty jurisdiction, but was exactly, in this respect, the same as though the accident had occurred on land, as in *State Industrial Comm.* v. *Nordenholt Corp.* (259 U. S. 263). The *Rohde* case, like the *Nordenholt* case, was a matter of " mere local concern " and had no " direct relation to navigation and commerce," the distinguishing characteristic of all the authorities involving a maritime tort occurring on navigable waters whether in repairing or reconditioning a ship or loading or unloading it. All of the maritime torts where the workmen's compensation laws were held ineffectual proceeded upon the distinct theory that it was the *subject-matter* that was involved; that is to say, " The *rights* and *liabilities* of the parties arose out of and depended upon the general maritime law and *could not be enlarged* or impaired by the State statute." (*Dahl Case, supra.*)

Our Workmen's Compensation Law (Consol. Laws, chap. 67, as amd. by Laws of 1922, chap. 615), upon which section 113 now under review has been engrafted, is not an amendment to the common law, but the establishment of heretofore unknown obligations, compensations and methods of procedure all different from and in place of those afforded by the common law. The general purpose of the act was to substitute, in cases to which it is applicable,

for common-law rights of action and grounds of liability a system of money payments based upon the loss of wages by way of relief for workers receiving injury in the course of and arising out of their employment.   The payments provided by the act are founded simply upon such injury and are entirely disconnected with any theory of fault on the part of the employer or right on the part of the employee established by law before the passage of the act save in instances of injury "" solely occasioned by intoxication of the injured employee while on duty or by willful intention of the injured employee to bring about the injury or death of himself or another." (See §§ 10, 11.)    With these exceptions, considerations of fault, negligence, tort or due care are excluded from proceedings under the act.    Likewise are excluded the common-law defenses of assumption of risk, negligence of fellow-servants, and contributory negligence. The amounts of the payments to be made under the act bear relation to the amount of wages received by the employee, are to be determined speedily and are to be paid at fixed times, ordinarily continued in installments regularly during a given period with additional privileges as to time and method of payment in part or in whole.   The word " compensation " in the connection in which it is used in the act means the money relief afforded according to the scale established and for the persons designated by the act, and not the compensatory damages recoverable in an action at law for a wrong done or contract broken.   As we have seen, the cases in the United States Supreme Court disclose the zealousness with which that court clings to the jurisdiction of the Federal courts over maritime torts and the tenaciousness with which they seek to preserve the essential and characteristic features and the uniform operation of the maritime law.   That this jurisdiction may be encroached upon or the essential features of the maritime law changed or modified any more effectively through the medium of *optional* rather than *compulsory* legislation, does not seem to me possible.   The fact of usurpation and encroachment, not the medium of its accomplishment, is the vital consideration.   The optional provision in section 113, if utilized by employer and employee, is effective to divest the Federal courts of jurisdiction by substituting therefor the jurisdiction of a State tribunal exercising functions unknown to the common law, and is effective also to work a material change in the maritime law by substituting for the rights and remedies there recognized and administered new rights and remedies unknown to the common law, and not embraced within the scope of the maritime law.   And the jurisdiction of which the Federal courts are thus divested is jurisdiction of *subject-matter,* *i. e.,* jurisdiction over a maritime tort.   It seems to me

that this may not be done either directly by compulsory legislation or indirectly through the medium of optional provisions.

A well-settled principle of law is that jurisdiction of the person, but *not jurisdiction of the subject-matter*, may be conferred by consent. As was said by Judge CULLEN, speaking of " jurisdiction of the court," in *Benson* v. *Eastern Bldg. & Loan Assn.* (174 N. Y. 83, 86): " That jurisdiction is prescribed by the Constitution of the State and the statutes passed under it. It can neither be added to nor subtracted from by the *agreement* of the parties. It is true that ' Parties, by their stipulations, may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce ' (*Matter of N. Y., L. & W. R. R. Co.*, 98 N. Y. 447), but the *jurisdiction of the court is beyond the agreement of the parties.*" (Italics mine.) Again, per POUND, J., in *Patrone* v. *Howlett* (237 N. Y. 394, 397): " Jurisdiction herein relates to the subject-matter of the action and cannot be conferred by consent." As I view it, the State is impotent to confer jurisdiction over the *subject-matter* of a maritime tort to the State Industrial Board or a Workmen's Compensation Commission, either with or without the consent of its subjects, because there is a total want of power to substitute this new court or forum in place of the courts provided by the Federal Constitution and pointed out in the many decisions.

In *Duart* v. *Simmons* (231 Mass. 313, 319), where the elective provisions are contained in the State statute, it was said, per RUGG, Ch. J.: " The ground of the *Jensen* decision as we understand it is that the kind of legislation represented by workmen's compensation acts is beyond the jurisdiction of the States so far as it relates to admiralty and maritime affairs. The reasoning of that decision seems to us to apply equally to an elective as to a compulsory workmen's compensation act. Consent of parties cannot confer jurisdiction. A statute which in its nature is outside the jurisdiction of the State because within the exclusive domain of the Federal government, cannot confer rights or be a bar to the enforcement of common law obligations." A similar ruling was made in another Massachusetts case (*Dorman's Case*, 236 Mass. 583) and in several other States where *elective* as distinguished from *compulsory* workmen's compensation acts were under consideration. (*Neff* v. *Industrial Comm.*, 166 Wis. 126; *Soderstrom* v. *Curry & White, Inc.*, 143 Minn. 154; *Foppen* v. *Fase & Co.*, 219 Mich. 136; *O'Brien* v. *Scandinavian-American Line*, 94 N. J. L. 244; *Lee* v. *Fletcher Co.*, 4 Fed. [2d] 3.) In neither *Danielsen* v. *Morse Dry Dock & Repair Co.* (235 N. Y. 439, 442) nor in *Matter of Lahti* v. *Terry & Tench Co.* (240 id. 292) was the question

presented by this record decided, although there may be said to be intimations in the opinions of Judge CARDOZO, who wrote in both cases, of a distinction between *elective* and *compulsory* compensation acts.

It now becomes necessary to consider the case of *Red Cross Line* v. *Atlantic Fruit Co.* (264 U. S. 109). That case involved a proceeding to compel arbitration, under our New York State Arbitration Law (Laws of 1920, chap. 275), of a claim resting upon an alleged breach of contract of a charter party. Our Court of Appeals (*Matter of Red Cross Line* v. *Atlantic Fruit Co.,* 233 N. Y. 373) held that the dispute involved a question of jurisdiction of the admiralty court, and that a State court was powerless to order a party to proceed to arbitration, a clause in the charter party providing for the arbitration of disputes arising thereunder. The United States Supreme Court reversed (Mr. Justice BRANDEIS delivering the opinion). To obtain a clear understanding of the situation there considered, it is important, to my mind, to mark the distinction obtaining between *substantive* and *remedial* law. Remedies exist and may be, and frequently are, applied in the redress of wrongs or the maintenance of rights that are not within the domain of litigation. Thus, as was said in *State* v. *Barlow* (70 Ohio St. 363, 376): " Redresses are of four kinds: 1. By act of the party injured, the principal of which are defense, recaption, distress, entry, abatement, and seizure; 2. By operation of law, as in the case of retainer and remitter; 3. By agreement between the parties, *e. g.,* by accord and satisfaction and arbitration; and 4. By judicial remedy, *e. g.,* action or suit." " The distinction between rights and remedies is fundamental. A right is a well founded or acknowledged claim; a remedy is the means employed to enforce a right or redress an injury." (*Chelentis Case, supra,* 384.)

Recurring now to Mr. Justice BRANDEIS' opinion in the *Red Cross Line* case, I think it will be found that the learned court held no more than that the Arbitration Law of New York, which it was enforcing, " deals merely with the remedy in the State courts in respect of obligations voluntarily and lawfully incurred," and that the act " does not attempt either to modify the substantive maritime law or to deal with the remedy in courts of admiralty." As I read that case, the ground of the decision was that our Arbitration Law simply affords a remedy for the *enforcement of the rights and obligations* of the parties *according to the principles of the maritime law;* and that the remedy so afforded is one which does not change the substantive maritime law and does not attempt to " modify " or to " displace " the essential features of that law.

Otherwise stated, legislation which permits the determination of the rights and obligations under a maritime contract *according to the principles of the maritime law*, through the medium of an *arbitration board* instead of by a State court, is within the limits of permissible legislation; for, in the settlement of the controversy submitted, the rules and principles of the maritime law govern and determine the action and decision of the board of arbitration equally as they could have controlled the decision of a State court in an action brought for the same purpose. The substitution of a board in the place of a court merely goes to the character of the tribunal which is to settle the controversy, but to settle it according to the governing rules of the maritime law. It effects no change whatever in the characteristic features of that law nor does it destroy the uniformity of its operation.

A cursory examination of our Arbitration Law will reveal the distinction between it and the Workmen's Compensation Law as a forum. The Arbitration Law (as amd. by Laws of 1921, chap. 14, and Laws of 1923, chap. 341) does not attempt to state what the substantive rights of the parties are nor the measure of compensation to be accorded the injured party upon the determination of his rights. It provides for the application of the provisions of our Civil Practice Act (§ 1448 *et seq.*, as renum. by Laws of 1921, chap. 199, from § 1410 *et seq.*) relating to arbitration, in the course of which confirmation of the award of the arbitrators must be had from the court, and judgment duly entered thereon if the award has not been vacated or set aside for reasons specified in the Civil Practice Act. We thus have strikingly different provisions in the Arbitration Law from those contained in the Workmen's Compensation Law. And thus it was, as it seems to me, that the United States Supreme Court in the *Red Cross Line Case* (*supra*) determined that the agreement to proceed to arbitration was a *remedy* and not a *right*. It was significantly added by Mr. Justice BRANDEIS, as showing the distinction between State statutes dealing with substantive maritime law and statutes providing a remedy to be applied according to the principles of maritime law, that " In no case has this court held void a State statute which neither modified the substantive maritime law, nor dealt with the remedies enforceable in admiralty."

In *Matter of Berkovitz* v. *Arbib & Houlberg* (230 N. Y. 261), in which our Arbitration Law was discussed by Judge CARDOZO with his usual force and ability, it was pointed out that the statute was " directed solely to the remedy." Such was the opinion of the Circuit Court of Appeals, Second Circuit, in *Atlantic Fruit Co.* v. *Red Cross Line* (5 Fed. [2d] 218, 219), where Circuit Judge

HOUGH said: " The arbitration statute of New York changed the common law, or at least the common-law method of thinking about arbitration in that State. What New York and other courts regarded as the ' common-law limitation upon enforcement of promises to arbitrate ' was a part of the law of remedies, which is always a portion of the law of the forum. Therefore the statute itself relates altogether to remedies. Such is the ruling of the New York Court of Appeals. *Berkovitz* v. *Arbib & Houlberg,* 230 N. Y. 261, at page 270, 130 N. E. 288, 290. This, as the learned court declares, is because ' arbitration is a form of procedure whereby differences may be settled. It is not a definition of the rights and wrongs out of which differences grow. (The statute) did not attach a new obligation to (contracts) already made. It vindicated by a new method the obligation then existing.' Since *The Lotta-wanna,* 21 Wall. 558, 22 L. Ed. 654, it seems superfluous to further discuss the proposition that the States acting through their Legislature or their courts cannot create a new remedy enforceable in the admiralty, nor take away any remedy there already existing. There are instances in which new substantive legal rights created by the States may be enforced by remedies of its own in the admiralty, but it is entirely plain that this matter of arbitration, whether based on a New York statute or resting upon traditional and judge-made law, is wholly matter of remedy."

It is suggested that the plaintiff could have given a general release and, therefore, the parties could effectuate the agreement now involved. The distinction between a release of a right of action, either before or after suit brought, and the agreement before us, seems marked. In the case of a release the parties put an end to litigation by steps that are sanctioned by the common law and are in harmony with the principles of the maritime law. In the case of the agreement to submit their maritime rights, obligations and liabilities to the State Industrial Board, the parties are consenting to confer jurisdiction of subject-matter upon a tribunal in which such jurisdiction cannot be lodged. That such board is a judicial tribunal (created by the Legislature) in view of its determining powers and the right of review of its findings by our appellate courts seems to me to admit of no question.

The last decision of the United States Supreme Court bearing upon the present case is *Miller's Indemnity Underwriters* v. *Braud* (—— U. S. ——, decided February 1, 1926). There, compensation was claimed under the law of Texas for the death of a " diver " who submerged himself from a floating barge anchored in a navigable river for the purpose of sawing off the timber of an abandoned set of ways, once used for launching ships, and while thus submerged the air

supply failed and he died of suffocation. The Workmen's Compensation Law of Texas is *elective* in character. It was urged upon the court that the rights and obligations of the parties were fixed by the maritime law which the State law could not alter. Mr. Justice McREYNOLDS delivered the opinion of an unanimous court, in the course of which the *Rohde Case (supra)* was again considered and followed upon the proposition that the labor in which the deceased was engaged was of such a character that the application of the State law to the case worked " no material prejudice to any characteristic feature of the general maritime law." And then was reiterated as the law " because of their special relation to commerce and navigation " the holding in the cases of maritime torts in which the injuries occurred in the performance of ship repair, such work being held not of " mere local concern " and that they were " beyond the regulatory power of the State." If the rule affecting workers engaged in the repair and reconditioning of ships in navigable waters is to be departed from, as Mr. Justice BRANDEIS suggested it should be in his dissenting opinion in *State of Washington* v. *Dawson & Co. (supra),* that court should announce it. We may not.

The discussion in which I have indulged leads me to the conclusion that where a suitor claiming a personal injury to have resulted from what is known as a maritime tort, resorts to a State court for the purpose of having his right of action determined pursuant to the rules of law fixed by maritime jurisprudence, he cannot be ousted because of an agreement voluntarily entered into by him to substitute a State Workmen's Compensation Law in the place and stead of his common-law remedy saved to him by the Federal statute.

If the views expressed are correct, it follows that the dismissal of the complaint was error, and that the judgment should be reversed upon the law, and a new trial granted, costs to abide the event.

RICH and JAYCOX, JJ., concur; KELLY, P. J., concurs in the result in separate memorandum; LAZANSKY, J., dissents and reads for affirmance.

KELLY, P. J. (concurring in result). I concur in the result. I do not think the decision in *Holland* v. *Atlantic Stevedoring Co.* (210 App. Div. 129; affd., 239 N. Y. 605), cited by the learned trial justice, validates the alleged contract relied upon by the defendant. In the case at bar the plaintiff, who had been working on ships and vessels all his life, testified, and his testimony was not contradicted, that when he applied to the defendant for work

as a " rigger," a year before the accident, he was handed a piece of paper to be signed before he was employed. In this alleged agreement, prepared by defendant for signature by its prospective employees, the employee for himself, his heirs, executors and assigns purports to waive his right to resort to a court of admiralty or a State court in case of injury and limits whatever rights he may have so that they shall be governed by the Workmen's Compensation Law of the State of New York. The employer on the other hand agrees that it will comply with the provisions of the State law and that it will secure the payment of compensation to the employee in accordance with its provisions. While it has been decided that under " modern industrial conditions " an employer and an employee may voluntarily make an agreement by which the employee surrenders his common-law right of action (*New York Central R. R. Co.* v. *White,* 243 U. S. 188, and cases cited), these cases have no reference to claims arising from maritime torts, and plaintiff's cause of action in the case at bar is based upon a maritime tort. It has been held that even the Legislature cannot deprive the claimant in such a case of his right to resort to a court of admiralty or of common law. (*Southern Pacific Co.* v. *Jensen,* 244 U. S. 205; *Knickerbocker Ice Co.* v. *Stewart,* 253 id. 149.) Much less can the individual employer accomplish the same result by exacting an agreement such as is here presented, in advance of and as a condition for employment. This is not the agreement sustained in the *Holland Case* (*supra*) voluntarily entered into after the happening of the accident by which the injured employee and the employer consented that the damage be ascertained and adjusted under the Workmen's Compensation Law (§ 113). The agreement in the case at bar appears to be an attempt by the employer to put its employees outside the pale, and to require them through the necessity for employment to relinquish their rights. If such contracts are lawful in the case of ordinary torts, I think we should be slow to extend the principle. At any rate, as to maritime torts I think such a contract is void.

LAZANSKY, J. (dissenting). The voluntary adoption by the parties of the law of this State as the basis of their relationship as to maritime torts, uncoerced by, and not contrary to the public policy of, the sovereign power, is not, it seems to me, within the scope of the United States Supreme Court decisions insistent on the uniformity of the maritime law.

The judgment should be affirmed, with costs.

Judgment reversed upon the law and a new trial granted, costs to abide the event.