# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
June 9, 2015 Session

## MID-SOUTH MAINTENANCE INC., ET AL. v. PAYCHEX INC., ET AL.

### Appeal from the Chancery Court for Shelby County
### No. CH140676     Jim Kyle, Chancellor

_____

### No. W2014-02329-COA-R3-CV – Filed August 14, 2015
_____

This is an arbitration case, wherein plaintiffs and the defendant-signatory expressly agreed to arbitrate any disputes arising from the contract and further agreed that the contract would be governed by New York law. Plaintiffs later filed suit against the defendant-signatory, as well as one of the defendant's employees, who had not signed the arbitration agreement, for breach of fiduciary duty, negligence, and aiding and abetting conversion. Defendants filed a motion to compel arbitration. The trial court denied the motion to compel arbitration on the ground that the plaintiff's claims were outside the scope of the arbitration agreement, citing Tennessee law. We hold that, pursuant to federal and New York law, because of the delegation clause contained in the arbitration agreement, the arbitrator is the proper tribunal to determine issues regarding the scope and unconscionability of the arbitration agreement. We also hold that because plaintiffs' claims against the non-signatory employee are intertwined with the claims against the signatory defendant, all disputes regarding the arbitrability of claims against the non-signatory employee must also be resolved by the arbitrator. Reversed and remanded.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which Arnold B. Goldin, J., and Brandon O. Gibson, J., joined.

Michael E. Keeney and Casey Shannon, Memphis, Tennessee, for the appellants, Paychex, Inc., and Robert Cunningham.

Bruce S. Kramer and Anne E. Kutsikovich, Memphis, Tennessee, for the appellees, Mid-

South Maintenance, Inc., an Oklahoma corporation, Mid-South Maintenance, Inc., a Tennessee corporation, and Worldwide Steel Works, Inc., an Oklahoma corporation.

**OPINION**

**<u>Background</u>**

Plaintiffs/Appellees Mid-South Maintenance, Inc. (Oklahoma), Mid-South Maintenance, Inc. (Tennessee), and Worldwide Steel Works, Inc. (Oklahoma) (collectively, "Appellees")[1] hired Kimberly Burk to serve as a bookkeeper in October 2005. Thereafter, Appellees assert that Ms. Burk convinced Appellees to enter into several contracts ("the Agreements") over the course of a year with Defendant/Appellant Paychex, Inc., ("Paychex")[2] for Paychex to provide payroll, "taxpay[,]" workers' compensation, and 401(k) services for the Appellees and their employees. In return for these services, Paychex was paid certain agreed-upon fees. Defendant/Appellant Robert Cunningham (together with Paychex, "Appellants") served as a client services representative with Paychex and was the primary contact between Appellees and Appellants. Mr. Cunningham worked out of Paychex's Tennessee office.

According to Appellees, from 2007 to 2011, Ms. Burk manipulated the Paychex system to embezzle $1.8 million from the Appellees. Accordingly, on April 25, 2014, Appellees filed a complaint in the Shelby County Chancery Court against Paychex and Mr. Cunningham for breach of fiduciary duty, negligence, and aiding and abetting conversion. According to the complaint, Mr. Cunningham was the primary contact between Ms. Burk and Paychex, and that he, either negligently or intentionally, provided information to Ms. Burk that she used to embezzle funds. Appellees asserted that Paychex negligently supervised Mr. Cunningham, negligently failed to detect the manipulation of its services, failed to employ proper safeguards, and failed to inform Appellees of the theft although their employees had knowledge of it and/or turned a blind eye to the misconduct. The complaint sought compensatory and punitive damages, as well as reimbursement for "all costs and expenses charged against [Appellees] by Paychex during the term of the Agreements." Attached to the complaint were copies of several contracts between the parties. Although the contracts all indicate that they span four pages, only pages one and three of each contract were attached to the complaint.

---

[1] All of the appellee companies share common ownership.

[2] Although Paychex is incorporated under the laws of Delaware, Paychex asserts that its headquarters is located in Rochester, New York.

2

On May 27, 2014, Appellants filed a motion to compel arbitration based upon the various contracts between the parties. Appellants included with their motion what they alleged was the missing page four of the parties' contracts, which included an arbitration clause. Specifically, this clause provided, in relevant part:

> 19. **Governing Law and Arbitration.** The Agreement shall be governed by the laws of the State of New York. **Except as provided herein, any dispute arising out of, or in connection with the Agreement shall be determined by binding arbitration in Rochester, New York, in accordance with the commercial rules of the American Arbitration Association** [(hereinafter, "AAA Rules")]**.** Any dispute arising under the agreement shall be brought within two (2) years of when the claim accrued. The arbitrator shall not be authorized to award exemplary or punitive damages. Paychex may, in its sole discretion, commence an action in any court of competent jurisdiction within the County of Monroe, State of New York, for any monies due and owing from Client to Paychex.

(Emphasis in original).

On June 23, 2014, Appellees responded in opposition, asserting several reasons for opposing arbitration. First, Appellees asserted that they were never provided full copies of the Agreements, specifically the pages that referenced arbitration. Next, Appellees argued that Tennessee law controlled because the complaint's torts claims were outside the scope of the arbitration provision. Appellees also argued that the agreements were unconscionable contracts of adhesion and that the arbitration provisions should not be enforced. Finally, Appellees asserted that the trial court, rather than the arbitrator, was the proper authority to determine these questions.

Appellants filed a reply to Appellees' response on September 25, 2014. In their reply, Appellants contended that all of the Agreements entered into between Appellees and Paychex contained the arbitration provision above and that, therefore, the arbitration provisions should be enforced. Further, Appellants argued that based upon the plain language of the arbitration clause, New York law controlled because of the choice of law provision contained in the parties' agreement and the fact that Paychex's headquarters is located in New York. Accordingly, Appellants argued that the trial court was bound to follow New York caselaw holding that when considering arbitration provisions that incorporated the AAA Rules, issues of enforceability are to be determined by the arbitrator. Appellants further argued that the

3

contracts are not unconscionable, that the claims asserted by the Appellees fell within the scope of the arbitration agreement, and that the claims against Mr. Cunningham individually were also subject to binding arbitration.

The trial court held a hearing on the motion to compel arbitration on October 3, 2014. On October 24, 2014, the trial court entered an order denying the motion to compel arbitration on the basis that the claims asserted by Appellees were torts, rather than breaches of contract. Specifically, the trial court stated:

> Whether the parties have an enforceable arbitration agreement is an issue the Court must decide. *Taylor v. Butler*, 142 S.W.3d 277, 284 (Tenn. 2004). The [Appellees] contend that the arbitration clause in the Agreements between the parties requires arbitration of the [Appellees'] claims. . . .
>
> As the Court stated at the October 3, 2014, hearing on the [Appellants'] Motion to Compel Arbitration, the Court finds that the [Appellees'] lawsuit is grounded in tort and therefore the disputes between the parties do not "arise out of or in connection with the Agreement" and the [Appellants'] Motion to Compel Arbitration should therefore be denied.

Appellants appealed.

## Issues Presented

Appellants raise two issues on appeal, which are taken, and slightly restated, from their appellate brief:

1. Whether the trial court committed reversible error in denying Appellees' Motion to Compel Arbitration, finding that the scope of the arbitration provisions of the Agreements do not include Appellees' tort claims?
2. Whether the Agreements and their arbitration provision should be enforced and the parties ordered to arbitrate Appellees' claims?

As discussed in detail, *infra*, Appellees did not raise any affirmative issues on appeal.

## Standard of Review

4

When ruling on the appeal of a denial of a motion to compel arbitration, we follow the standard of review that applies to bench trials. ***Spann v. Am. Express Travel Related Servs. Co.***, 224 S.W.3d 698, 706–07 (Tenn. Ct. App. 2006). Accordingly, our review of the trial court's findings of fact is "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). Questions of law are likewise reviewed *de novo* without a presumption of correctness. ***Johnson v. Johnson***, 37 S.W.3d 892, 894 (Tenn. 2001).

To the extent that this dispute requires us to interpret the parties' contract, we apply the rules governing interpretation of all contracts. *See **Frizzell Constr. Co. v. Gatlinburg, L.L.C.***, 9 S.W.3d 79, 85 (Tenn. 1999). According to the Tennessee Supreme Court:

> [T]he "cardinal rule [in interpreting contracts] . . . is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." ***Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.***, 521 S.W.2d 578, 580 (Tenn. 1975). Courts may determine the intention of the parties "by a fair construction of the terms and provisions of the contract, by the subject matter to which it has reference, by the circumstances of the particular transaction giving rise to the question, and by the construction placed on the agreement by the parties in carrying out its terms." ***Penske Truck Leasing Co. v. Huddleston***, 795 S.W.2d 669, 671 (Tenn. 1990). No single clause in a contract is to be viewed in isolation; rather, the contract is to be "viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another." ***Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.***, 690 S.W.2d 231, 237 (Tenn. 1985).

***Frizzell***, 9 S.W.3d at 85.

## Discussion

### Controlling Law

As an initial matter, this Court must determine which state's law controls this dispute. The trial court referenced only Tennessee law in its final order; accordingly, we must assume that the trial court ruled that Tennessee law controlled the dispute in this case. Appellees urge this Court to affirm the trial court's ruling, arguing that because the issues in this case involve only a tort, the dispute should be determined by the law of the state with the most significant relationship to the tort. *See generally **Hataway v. McKinley***, 830 S.W.2d 53, 59 (Tenn. 1992). Because Appellees contend that Tennessee has the most significant

relationship to the torts at issue and Tennessee law generally provides that issues of the scope of arbitration and the enforcement of an arbitration provision should be decided by the trial court, Appellees argue that the trial court properly considered the dispute in this case. *See generally Frizzell*, 9 S.W.3d at 85 ("Tennessee law contemplates judicial resolution of contract formation issues."); *Wright Med. Tech., Inc. v. Orthomatrix, Inc.*, No. W2000-02744-COA-R3CV, 2001 WL 523992, at *7 (Tenn. Ct. App. May 17, 2001) (holding that the trial court did not overstep its jurisdictional limits in deciding the issue of arbitrability); *Estate of Wyatt*, No. 02A01-9706-PB-00132, 1998 WL 477668, at *3 (Tenn. Ct. App. Aug. 17, 1998) (holding that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute").

In contrast, Appellants assert that this Court must apply the law applicable to the arbitration provision to determine whether the Appellees' tort claims fall within the scope of the arbitration agreement. We take guidance from two Tennessee Supreme Court cases on this issue, *Frizzell Construction Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79 (Tenn. 1999), and *Taylor v. Butler*, 142 S.W.3d 277, 282 (Tenn. 2004). In both cases, the plaintiffs filed complaints alleging several causes of action, including claims of fraudulent inducement. Defendants in both cases filed motions to compel arbitration. Although both arbitration provisions were governed by the Federal Arbitration Act ("FAA"), the arbitration agreement in *Frizzell* included an additional provision stating that Tennessee law would govern the contract. *Frizzell*, 9 S.W.3d at 81. In both cases, however, the Tennessee Supreme Court considered the governing law provisions of both parties' contracts to determine the scope of arbitration rather than general Tennessee law. Of course, because the *Frizzell* arbitration law was governed by Tennessee law, the Tennessee Supreme Court applied Tennessee caselaw to hold that a fraudulent inducement claim was to be determined by the trial court. *Id.* In contrast, in *Taylor*, the Tennessee Supreme Court held that the FAA provided that a fraudulent inducement claim should be decided by the arbitrator. *Taylor*, 142 S.W.3d at 282.

Regardless of the differing outcomes, the two cases were consistent in that, when considering the scope of an arbitration clause, the court will still consider the contract's language, including any choice of law provision, as well as general law applicable to the arbitration clause, in order to determine whether a claim falls within the scope of arbitration. Accordingly, regardless of the fact that Appellees claim that the parties' contract should not be relevant in determining what law to apply to the question of whether their claims fall within the scope of arbitration, both *Frizzell* and *Taylor* indicate otherwise. Indeed, this Court was faced with a highly analogous situation in *Dale Supply Co. v. York Int'l Corp.*, No. M2002-01408-COA-R3CV, 2003 WL 22309461 (Tenn. Ct. App. Oct. 9, 2003). The sole issue in *Dale Supply* involved whether the parties' arbitration agreement required that the parties arbitrate the plaintiff's tort claims concerning acts that arose after the parties' contractual relationship ended. *Id.* at *1. In order to determine this issue, the Court of

6

Appeals first considered the law applicable to the parties' arbitration agreement, which the Court then utilized to determine the scope of the arbitration. *Id.* at \*3–\*4. Nowhere in the Opinion does the Court consider the conflict of law rules applicable solely to torts, despite what Appellees argue. *See generally id.* at \*1–\*6; *see also Clayton v. Davidson Contractors, LLC*, No. E2013-02296-COA-R3-CV, 2015 WL 1880973, at \*7 (Tenn. Ct. App. Apr. 24, 2015) (considering federal arbitration law before determining if a valid contract containing an arbitration clause had been agreed to by the parties). Accordingly, we too must consider the law applicable to the arbitration provision in order to determine the proper scope of arbitration.

Appellants first argue that the parties' agreement to arbitrate is governed by the FAA because it concerns matters of interstate commerce. We agree. According to the Tennessee Supreme Court:

> The FAA applies to "a written provision in any maritime transaction or a contract evidencing a transaction involving interstate commerce[3] to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2 (1994). The purpose of the FAA is "to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (quoting *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). Generally, arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

*Taylor v. Butler*, 142 S.W.3d 277, 281 (Tenn. 2004). Although the *Taylor* Opinion involved an arbitration provision that expressly cited the FAA, *see id.* at 280, this Court has held that the FAA "governs the enforcement of any agreement to arbitrate in contracts that involve interstate commerce. *Dale Supply*, 2003 WL 22309461, at \*3 (describing the conclusion as "incontestable") (citing *Tenn. River Pulp & Paper Co. v. Eichleay Corp.*, 637 S.W.2d 853,

---

[3] The actual language of 9 U.S.C. § 2 requires only that the contract involve "commerce," rather than interstate commerce. *See* Federal Arbitration Act, ch. 392, § 1, 61 Stat. 669 (1947) (codified at 9 U.S.C. § 2 ). This portion of the statute has not been amended since its enactment. Section 1 of the FAA, however, defines "commerce" as, *inter alia*, "among the several States," i.e., interstate commerce. *See* 9 U.S.C. § 1. Accordingly, the typographical error in *Taylor* does not affect our analysis.

855 (Tenn. 1982) ("When a transaction clearly involves interstate commerce, the Act should apply equally in state and federal courts[.]"); *Berkley v. H & R Block E. Tax Servs., Inc.*, 30 S.W.3d 341, 343 (Tenn. Ct. App. 2000) (applying the FAA to the arbitration agreement at issue); *see also Guffy v. Toll Bros. Real Estate*, No. M2003-01810-COA-R3CV, 2004 WL 2412627, at *5 (Tenn. Ct. App. Oct. 27, 2004) ("If, based on all of the relevant contract documents, the trial court determines that the parties did not expressly agree that the FAA would govern their arbitration agreement, the court must then go further and determine whether the FAA applies because the "contract evidenc[es] a transaction involving commerce," thereby bringing it within the ambit of the FAA[.]"). Because the contract in *Dale Supply* involved "the flow of goods, services, reports and payments between" two different states, the Court of Appeals concluded that the contract involved interstate commerce and was governed by the FAA. *Dale Supply*, 2003 WL 22309461, at *3 ("Since the Agreement between [the parties] involves interstate commerce, case law arising under the FAA applies to interpret the scope of the arbitration clause to determine whether [plaintiff's] tort claims . . . are arbitrable."). Likewise in this case, Paychex is a corporation incorporated in Delaware and headquartered in New York. The Appellee companies do business in both Tennessee and Oklahoma. The purpose of the contracts was for Paychex to provide payroll, taxpay, workers' compensation, and 401(k) services for the Appellees. To this end, the contract required a flow of services, reports, and payments between the three states involved in this contract. The Tennessee Supreme Court has recognized that the United States Supreme Court has interpreted the term "involving commerce" as used in the FAA as "encompass[ing] 'the broadest permissible exercise of Congress' Commerce Clause power.'" *Morgan Keegan & Co. v. Smythe*, 401 S.W.3d 595, 604 (Tenn. 2013) (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (per curiam)). Under these circumstances, we must conclude that the contracts between Appellees and Paychex involve interstate commerce. Accordingly, the FAA governs these transactions.

That is not to say, however, that state law never plays a part in disputes covered by the FAA. Instead, "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995). Moreover, the Tennessee Supreme Court has noted that the United States Supreme Court has held that even in arbitrations governed by the FAA, "parties may choose the arbitration law by which they intend to be governed." *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 86 (Tenn. 1999) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S. Ct. 1212, 1216, 131 L. Ed. 2d 76 (1995) (holding that parties to an arbitration agreement may "specify by contract the rules under which that arbitration will be conducted.")); *see also Owens v. Nat'l Health Corp.*, 263 S.W.3d 876, 883 (Tenn. 2007) ("[P]arties to an arbitration agreement are at liberty to choose the terms under which they will arbitrate, and a contract that might

8

ordinarily be governed by the [FAA] may provide that it will be governed by a particular state's [law]."). Thus, under both the FAA and Tennessee law, parties may choose, through a choice of law contractual provision, the law upon which the arbitration at issue will be conducted.

Here, the parties' arbitration provision clearly indicates that it should be "governed by the laws of the State of New York." Appellees contend, however, that this Court should not enforce this choice of law provision because the parties and their transaction have no rational relationship with New York. We respectfully disagree. "Tennessee will honor a choice of law clause if the state whose law is chosen bears a reasonable relation to the transaction and absent a violation of the forum state's public policy." *Wright v. Rains*, 106 S.W.3d 678, 681 (Tenn. Ct. App. 2003) (quoting *Bright v. Spaghetti Warehouse, Inc.*, No. 03A01-9708-CV-00377, 1998 WL 205757, at *5, (Tenn. Ct. App. April 29, 1998)). The record reflects that Paychex is headquartered in New York State[4], and nothing in the record indicates that applying New York law to this case would violate Tennessee's public policy. Accordingly, the parties' choice of law provision is binding on this Court.

Appellees next contend that the trial court properly decided the question of the scope of the parties' arbitration agreement because the law surrounding that issue is procedural, rather than substantive. The Appellees are correct in their assertion that the forum, in this case a Tennessee state court, will apply its own procedural law. *See In re Stalcup's Estate*, 627 S.W.2d 364, 368 (Tenn. Ct. App. 1981); *Sherwin Williams Co. v. Morris*, 25 Tenn.App. 272, 156 S.W.2d 350, 352 (Tenn. Ct. App. 1941). To support this argument, Appellees cite two Tennessee Supreme Court cases. First, in *Buraczynski v. Eyring*, 919 S.W.2d 314 (Tenn. 1996), the Tennessee Supreme Court held that arbitration agreements "do not limit liability, but instead designate a forum that is alternative to and independent of the judicial forum." *Id.* at 319. Next, in *Taylor v. Butler*, the Tennessee Supreme Court held that the arbitration provisions at issue "only relate[d] to remedy," and, therefore, were collateral to and severable from the remaining contractual provisions. *Taylor*, 142 S.W.3d at 287. Because Appellees contend that matters related only to remedy are properly classified as procedural, they argue that Tennessee's law should apply to this dispute. *See generally* 16 Am. Jur. 2d *Conflict of Laws* § 93 ("Matters of procedure in a contract action, as well as issues of remedy, are generally governed by the law of the forum.") (footnotes omitted).

We again respectfully disagree. The Tennessee Supreme Court has specifically held that the FAA "contains federal **substantive** law requiring the parties and the courts to honor

---

[4] The copies of the agreements that were attached to Appellees' complaint indicate that Paychex "is located in Rochester, New York." In addition, the record contains a computer-generated print-out from the Paychex website providing the address for the Paychex headquarters in Rochester, New York. Appellees have offered nothing to rebut Paychex's contention that it is headquartered in New York.

arbitration agreements." ***Morgan Keegan & Co. v. Smythe***, 401 S.W.3d 595, 606 (Tenn. 2013) (emphasis added) (citing ***Southland Corp. v. Keating***, 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). Indeed, Tennessee state courts considering the arbitrability of certain claims, the very question presented in this appeal, have uniformly applied the substantive law of the FAA to determine the dispute, so long as the parties did not otherwise manifest an intent to be governed by Tennessee law. *See **Taylor***, 142 S.W.3d at 287 (applying the FAA to determine whether a particular claim would be arbitrated, even though FAA conflicted with Tennessee law); ***Frizzell***, 9 S.W.3d at 81 (applying Tennessee law to determine whether a claim would be arbitrated only because the contract choice of law provision provided that Tennessee law would control); ***Thornton v. Allenbrooke Nursing & Rehab. Ctr., LLC***, No. W2007-00950-COA-R3-CV, 2008 WL 2687697, at *5 (Tenn. Ct. App. July 3, 2008) (holding that where the parties have entered into a valid arbitration agreement, a choice of law provision indicating that the arbitration shall be governed by the FAA is binding); ***Flanary v. Carl Gregory Dodge of Johnson City, LLC***, No. E2004-00620-COA-R3CV, 2005 WL 1277850, at *8 (Tenn. Ct. App. May 31, 2005) (holding that question of what claims were properly decided by the arbitrator was resolved by application of federal, rather than state, law, as the arbitration contract expressly provided it would be governed by the FAA); ***Dale Supply***, 2003 WL 22309461, at *3 (applying the FAA to determine whether the plaintiff's tort claims should be decided by the arbitrator). Further, in at least one other case, this Court. onsidering an arbitration clause that provided it would be governed by the laws of Ohio looked to the law of Ohio to determine the enforceability of the arbitration clause at issue. *See **Credit Gen. Ins. Co. v. Ins. Serv. Grp., Inc.***, No. E2007-00033-COA-R3CV, 2007 WL 2198475, at *2–*3 (Tenn. Ct. App. July 31, 2007) (involving whether an arbitration clause could be enforced by an insurance company in liquidation). Thus, the Court implicitly held that, under Tennessee law, the law governing the arbitration was substantive rather than procedural. ***Id.***[5] Appellees have cited no cases in which Tennessee courts have declined to apply the FAA or the parties' chosen law to the interpretation and enforcement of an arbitration provision on the ground that the law involved was procedural, rather than substantive. Accordingly, we conclude that Tennessee courts have uniformly held that the law surrounding the arbitrability of claims and the enforcement and interpretation of arbitration clauses are substantive in nature. Consequently, we will apply the FAA and New York state law to substantive matters, while Tennessee law will govern procedural issues.

Appellees argue, however, that even applying New York law to this dispute results in Tennessee law being applied, as Appellees contend that the issue of enforcement of an

---

[5] Interestingly, however, upon consideration of Ohio law, the Court of Appeals concluded that Ohio law provides that "issue of arbitration was a procedural remedy to be decided pursuant to the law of the forum state." ***Id.*** at *2. Accordingly, although the law was substantive in Tennessee, thus requiring the Court to look to Ohio law, the same law was procedural in Ohio, requiring the Court to return to application of Tennessee law. ***Id.*** at *2–*3.

arbitration agreement is a matter of procedural law in New York. Accordingly, much like the procedure in *Credit General*, discussed *supra*, Appellees argue that New York law requires that this Court apply Tennessee law, as it is the law of the forum. To support this argument, Appellees rely on the New York case of *Berkovitz v. Arbib & Houlberg*, 230 N.Y. 261, 130 N.E. 288 (N.Y. 1921), which holds that "[t]he common-law limitation upon the enforcement of promises to arbitrate is part of the law of remedies," which requires application of the law of the forum. *Id.* at 289–90.

Unfortunately, Appellants chose not to address this issue in either their initial brief or reply brief to this Court. We note, however, that the rule recited in *Berkovitz* expressly applies to arbitration agreements that are governed solely by the common law, rather than by federal statute. Indeed, the FAA was not enacted until July 1947, *see* Federal Arbitration Act, ch. 392, § 1, 61 Stat. 669 (1947) (codified at 9 U.S.C. § 2), after the decision in *Berkovitz* or any of the subsequent cases that cite *Berkovitz* for this proposition. *See In re Gantt*, 189 Misc. 237, 242, 70 N.Y.S.2d 55, 59 (N.Y. Sup. Ct. March 27, 1947), *aff'd sub nom. Gantt v. Hurtado & CIA*, 272 A.D. 801, 71 N.Y.S.2d 892 (N.Y. App. Div. 1947) (affirming without Opinion), *aff'd sub nom. Gantt v. Felipe Y. Carlos Hurtado & CIA*, 297 N.Y. 433, 79 N.E.2d 815 (N.Y. 1948) (determining that New York law applied because the parties chose to submit their dispute in New York, which the Court held was "a consent of the parties thereto to the jurisdiction of the supreme court of this state to enforce such contract or submission;" no choice of law provision was contained in the parties' contract or discussed); *Christensen v. Morse Dry Dock & Repair Co.*, 216 A.D. 274, 286, 214 N.Y.S. 732, 744 (N.Y. App. Div. 1926).

More recent cases lead this Court to conclude that the holding in *Berkovitz* is not reflective of current New York law. For example, in 2005, the New York Supreme Court considered the question of whether New York or California law applied to determine whether the subject arbitration contract was unconscionable and, therefore, unenforceable. *See Oce Bus. Servs., Inc. v. Christensen*, 8 Misc. 3d 1017(A), 803 N.Y.S.2d 19, 2005 WL 1712143, at *3–*4 (N.Y. Sup. Ct. 2005). Had the New York court concluded that the rules governing arbitration in New York were procedural, the Court would have been bound to follow New York law. *See generally Marine Midland Bank, N.A. v. United Mo. Bank, N.A.*, 223 A.D.2d 119, 122, 643 N.Y.S.2d 528, 530 (N.Y. Sup. Ct. 1996) ("[U]nder common-law rules matters of procedure are governed by the law of the forum") (citing *Martin v. Julius Dierck Equip. Co.*, 43 N.Y.2d 583, 588, 374 N.E.2d 97, 99 (N.Y. 1978)). The New York Supreme Court, however, applied California law to determine the dispute. *Christensen*, 2005 WL 1712143, at *3–*4. Accordingly, the Court impliedly held that the issues concerned substantive law, rather than procedural law.

11

Additionally, the New York Court of Appeals, construing an arbitration agreement governed by both the FAA and New York law, has concluded that parties are free to choose the law upon which the arbitration will be conducted. *See Smith Barney, Harris Upham & Co. v. Luckie*, 85 N.Y.2d 193, 204–05, 647 N.E.2d 1308, 1315 (N.Y. 1995). Clearly, this conclusion would not have been warranted if the law upon which arbitration is conducted is merely procedural in nature. Indeed, the New York Court of Appeals has expressly stated that "New York honors 'the parties' selection of New York law to govern their agreement and its enforcement.'" *Smith Barney Shearson Inc. v. Sacharow*, 238 A.D.2d 155, 157, 656 N.Y.S.2d 203, 205 (N.Y. Sup. Ct. 1997), *aff'd*, 91 N.Y.2d 39, 689 N.E.2d 884 (N.Y. 1997) (quoting *Smith Barney, Harris Upham & Co. v. Luckie*, 85 N.Y.2d 193, 202, 647 N.E.2d 1308, 1313 (N.Y. 1995)). In our view, if a New York court would be bound to honor the parties' choice of law provision, so too would this Court applying New York law be bound. *See also Windsor United Indus., LLC v. Windsor Fixtures, Inc.*, 28 Misc. 3d 1202(A), 911 N.Y.S.2d 697, 2010 WL 2574057, at *2 n.1 (N.Y. Sup. Ct. 2010) (holding that "New York's own conflicts of laws principles would similarly require that the parties['] choice of law provision be honored" in the arbitration context). Under these circumstances, we conclude that the arbitration rules at issue, specifically with reference to the arbitrability of certain disputes, constitute rules of substantive law. Accordingly, the law of the forum will not apply; instead, this Court will "apply ordinary [New York] state-law principles that govern the formation of contracts" and federal substantive law, where applicable, to determine the issues in this case. *First Options*, 514 U.S. at 944.

## Arbitrability

Our analysis in this case concerns the arbitrability of three key issues: (1) whether Appellees' claims fall within the scope of the arbitration agreement; (2) whether the arbitration provision of the parties' contract is unconscionable; and (3) whether Appellees' claims against Mr. Cunningham are arbitrable. The United States Supreme Court has defined arbitrability as "a gateway dispute about whether the parties are bound by a given arbitration clause[.]" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588, 592, 154 L. Ed. 2d 491 (2002). Accordingly, these issues concern whether the trial court or the arbitrator is the proper tribunal for determining these issues.

Before we can address the merits of New York law on these issues, we must first consider a preliminary issue. Initially, we note that throughout the trial court proceedings, Appellees maintained that they never received a copy of the purported arbitration agreement between the parties; therefore, Appellees argued that they had not actually agreed to arbitrate any disputes in accordance with the arbitration agreement. Although unclear from their brief, it appears that Appellants argue that this question is a question of arbitrability that must be determined by the arbitrator. We respectfully disagree.

12

The United States Supreme Court in ***Granite Rock Co. v. International Brotherhood of Teamsters***, 561 U.S. 287, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010), addressed this issue. Specifically in ***Granite Rock***, the parties seeking to avoid arbitration alleged that the collective bargaining agreement that contained the arbitration clause was not properly ratified and, therefore, not binding. ***Id.*** at 296. Thus, the parties disputed whether they ever formed a binding contract containing an arbitration provision.

The Court emphasized that: "It is well settled in both commercial and labor cases that whether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an 'issue for judicial determination.'" ***Id.*** (quoting ***Howsam v. Dean Witter Reynolds, Inc.***, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)). According to the ***Granite Rock*** Court: "It is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." ***Granite Rock***, 561 U.S. at 296. Based upon these principles, the Court held:

> [This case] require[s] us to reemphasize the proper framework for deciding when disputes are arbitrable under our precedents. Under that framework, a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*. . . . To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce. . . . Where there is no provision validly committing them to an arbitrator, . . . these issues typically concern the scope of the arbitration clause and its enforceability. In addition, these issues always include whether the clause was agreed to, and may include when that agreement was formed.

***Id.*** at 297 (internal citations removed for clarity of reading). The Court further held that questions of whether and when a contract was formed "require[] judicial resolution" because they relate to whether the parties consented to arbitrate. ***Id.*** at 303. As the Court explained, despite the policy favoring arbitration inherent in federal law:

> [E]xcept where "the parties clearly and unmistakably provide otherwise," . . . it is "the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning" a particular matter[.] . . . They then discharge this duty by: (1) applying the presumption of

13

arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering to the presumption and ordering arbitration only where the presumption is not rebutted.

*Id.* at 301 (internal citations removed for clarity of reading). Thus, questions of contract formation must be determined by the court, rather than the arbitrator.

The *Granite Rock* decision has been cited favorably by New York Courts applying both FAA and New York law. *See Pers. Commc'ns Devices, LLC v. HTC Am., Inc.*, 40 Misc. 3d 790, 796, 970 N.Y.S.2d 370, 376 (N.Y. Sup. Ct. 2013) ("Although there exists a presumption of arbitrability where a valid and enforceable arbitration agreement has been formed, such presumption has been limited to those instances where the party seeking to enforce arbitration demonstrates that the parties have in fact agreed to submit the dispute in question to arbitration."); *Brean Capital, LLC v. NewOak Capital LLC*, 46 Misc. 3d 1203(A), 9 N.Y.S.3d 592, 2014 WL 7269750, at *3 (N.Y. Sup. Ct. 2014) ("[I]n FAA cases, the presumption in favor of arbitrability should only be applied 'where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand[.]'") (quoting *Granite Rock*, 561 U.S. at 302).

Although not binding precedent in this case, we note that this Court has also considered the *Granite Rock* Opinion with regard to an arbitration agreement governed by the FAA. *See Clayton v. Davidson Contractors, LLC*, No. E2013-02296-COA-R3-CV, 2015 WL 1880973 (Tenn. Ct. App. Apr. 24, 2015). According to this Court, *Granite Rock* stands for the proposition that:

[W]hen a party claims it never concluded an agreement at all, it is for the court, not the arbitrator, to determine whether the parties agreed to the arbitration provision upon which the party seeking arbitration relies. *Granite Rock*, 561 U.S. at 299–300. Although there is a federal policy favoring arbitration, that policy does not override the principle of consent. *Id.* at 302.

*Clayton*, 2015 WL 1880973, at *7. In *Clayton*, this Court determined that the parties' argument constituted a "classic formation issue": the parties argued that "a contract was never formed." *Id.* at *8. Thus, the Court concluded that this issue should be resolved by the court. *Id.* ("If the [plaintiffs] were compelled to arbitrate whether they agreed to the warranty contract, including the delegation provision, the arbitrator would determine his own authority to decide the parties' dispute. If the arbitrator concluded the parties did not have a contract, the arbitrator had no authority to decide the dispute. If the arbitrator concluded the parties did have a contract, the arbitrator effectively granted himself jurisdiction."). Accordingly, the

14

*Clayton* Court vacated the trial court's judgment and remanded for the trial court to determine the threshold question of whether the plaintiffs entered into the underlying contract, including its arbitration provision. *Id.*

Based upon the holding in *Granite Rock*, the issue of whether a contract containing an arbitration provision was formed remains a question that must be determined by the court as a threshold matter. We note, however, that Appellees failed to designate the question of whether a contract was ever formed between the parties that included an arbitration provision as an issue in their appellate brief. It is well-settled that this Court will "consider an issue waived where it is argued in the brief but not designated as an issue" in the appellant's brief. *See Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002). This rule applies equally to appellees who seek affirmative relief from this Court. *See Forbess v. Forbess*, 370 S.W.3d 347, 358 (Tenn. Ct. App. 2011) (holding that because the appellee was "dissatisfied" with the trial court's ruling, "the rules require that he was to present his own statement of the issues for review"; failure to designate argument as issue in statement of issues resulted in waiver of argument on appeal). Accordingly, if Appellees' argument regarding the formation of the contract seeks affirmative relief from this Court, their failure to designate this argument as an issue in their brief will be fatal to this Court's review. *See also Wilson v. City of Memphis*, No. W2014-01822-COA-R3-CV, 2015 WL 4198769, at *11 (Tenn. Ct. App. July 13, 2015) ("Because [petitioner] prevailed in the trial court in reversing the judgment of the Commission and only seeks to uphold the trial court's judgment, she does not appear to be seeking any affirmative relief from this Court. Accordingly, her failure to brief this issue does not result in a waiver.").

In order to determine if Appellees waived this argument, we must consider the trial court's judgment. Here, the trial court's order does not contain an explicit finding that the parties entered into a contract containing an agreement to arbitrate. The trial court's order does, however, conclude that the Appellees' claims do not fall within the scope of the arbitration clause and applies Tennessee arbitration law to reach this decision. The Tennessee Supreme Court's recent Opinion in *Morgan Keegan & Co. v. Smythe*, 401 S.W.3d 595 (Tenn. 2013), is instructive on this issue.

In *Smythe*, the parties disagreed as to whether the trial court's order vacating an arbitration award was immediately appealable. *Id.* at 603. Pursuant to the Tennessee Uniform Arbitration Act, several orders by the trial court with regard to arbitration are immediately appealable, including orders denying an arbitration award or orders "vacating an award without directing a re-hearing." *Id.* at 603–04 (quoting Tenn. Code Ann. § 29-5-319(a)). Although the *Smythe* Court held that the contract was governed by the FAA, the Court determined that the order was nevertheless appealable pursuant to Tennessee law, as Tennessee's arbitration appeal provisions are procedural, rather than substantive, and do not stand as an obstacle to the purposes and objectives of the FAA. *Id.* at 607.

15

The question remained, however, as to whether the trial court's order sufficiently complied with the Tennessee Uniform Arbitration Act to allow an immediate appeal. In *Smythe*, the trial court vacated the arbitration award and remanded for a rehearing without expressly denying confirmation of the arbitration award. *Id.* at 604. Accordingly, the trial court's express ruling did not fall within any of the specific orders that were immediately appealable pursuant to the Tennessee Uniform Arbitration Act. *See generally* Tenn. Code Ann. § 29-5-319(a). The plaintiff argued that "the lack of explicit language denying confirmation of the award necessarily means that the order cannot be considered "an order . . . denying confirmation of an award" for the purpose of Tenn. Code Ann. § 29-5-319(a)[.]" *Smythe*, 401 S.W.3d at 608.

The Tennessee Supreme Court disagreed. Instead, the Court held that:

> When an order or judgment permits more than one interpretation, it should be construed with reference to the issues it was meant to decide, *In re Langenfeld*, 160 N.H. 85, 993 A.2d 232, 236 (2010), and should be interpreted in light of the context in which it was entered, as well as the other parts of the record, including the pleadings, motions, issues before the court, and arguments of counsel. *Kiefer v. Rust–Oleum Corp.*, 394 Ill.App.3d 485, 333 Ill.Dec. 903, 916 N.E.2d 22, 29 (2009); *see also Los Angeles Local Joint Exec. Bd. of Culinary Workers v. Stan's Drive–Ins, Inc.*, 136 Cal.App.2d 89, 288 P.2d 286, 290 (1955) ("The rule with respect to orders and judgments is that the entire record may be examined to determine their scope and effect . . . .").

> Court orders and judgments, like other documents, often speak as clearly through implication as they do through express statements. Accordingly, when construing orders and judgments, effect must be given to that which is clearly implied, as well as to that which is expressly stated. *Sosin v. Sosin*, 300 Conn. 205, 14 A.3d 307, 316 (2011); *Dairyland, Inc. v. Jenison*, 207 N.W.2d 753, 754 (Iowa 1973); *State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell*, 228 W.Va. 252, 719 S.E.2d 722, 737 (2011).

*Smythe*, 401 S.W.3d at 608. The Tennessee Supreme Court indicated that such a rule was necessary to ensure "the expeditious disposition of an arbitration." *Id.* at 609 (quoting David D. Siegel, *Practice Commentary: Appeals from Arbitrability Determinations*, 9 U.S.C.A. § 16, at 747 ("[A]rbitration is a form of dispute resolution designed to save the parties time, money, and effort by substituting for the litigation process the advantages of speed, simplicity, and economy associated with arbitration. Its theme is that judicial involvement in the process should be kept to the barest minimum to avoid undermining those goals.")). Thus, the Court concluded that the trial court's order necessarily denied the defendant's request for confirmation of the arbitration award when it granted the plaintiff's motion to vacate the award. Accordingly, the Tennessee Supreme Court held that the order entered by the trial court was immediately appealable. *Smythe*, 401 S.W.3d at 612.

Two holdings from *Smythe* are important to this case: (1) that trial courts' orders in the arbitration context must be construed considering both what is expressly stated and what is clearly implied; and (2) that this is a procedural rule in Tennessee that is not preempted or superseded by the FAA. Because Tennessee courts apply Tennessee procedural law, the *Smythe* Court's holdings are applicable in this case. *See Stalcup's Estate*, 627 S.W.2d at 368; *Sherwin Williams*, 156 S.W.2d at 352; *see also Payne v. CSX Transp., Inc.*, No. E2012-02392-SC-R11-CV, 2015 WL 3991141, at *15 (Tenn. July 1, 2015) (applying the *Smythe* holding to a claim governed by federal law).

Applying the holding in *Smythe* to the trial court's order in this case, we must conclude that a finding that the parties' contract contained an arbitration provision, while not expressly stated, was "clearly implied." *Id.* Here, the trial court denied arbitration by finding that the Appellees' tort claims "do not 'arise out of or in connection with the Agreement[.]'" This holding implies that the parties' contract indeed contains an arbitration provision. Moreover, the trial court applied the Tennessee Supreme Court's decision in *Taylor v. Butler*, 142 S.W.3d 277, 284 (Tenn. 2004), to determine its ruling; the *Taylor* case concerned a contract containing an arbitration agreement. Accordingly, the trial court's order must be construed to include a finding that the parties' agreement contains an arbitration clause, as argued by the Appellants.

Based upon our conclusion that the trial court's order contained an implicit finding that a contract had been formed between the parties including an arbitration provision, we must conclude that Appellees' argument that no agreement regarding arbitration exists constitutes dissatisfaction with the trial court's order. Accordingly, if this Court were to determine that no agreement to arbitrate existed, we would be granting affirmative relief to the Appellees. However, as previously discussed, Appellees did not include this issue in a statement of the issues section of their appellate brief; indeed, Appellees' appellate brief contains no statement of the issues section. Although Appellees did include their contention as an alternative argument in the argument section of their appellate brief, this is insufficient

17

to raise this issue on appeal. *See Rountree v. Rountree*, 369 S.W.3d 122, 130 (Tenn. Ct. App. 2012) ("We may consider an issue waived where it is argued in the brief but not designated as an issue.") (citing *Childress*, 97 S.W.3d at 578). Consequently, this issue is waived, and we may proceed to consider the question of the arbitrability of the parties' disputes based upon the parties' agreement to arbitrate.

## II. Scope of Arbitration

We next consider whether, pursuant to New York state law,[6] the issue of the scope of the parties' arbitration clause should be decided by the court or by the arbitrator. We conclude that this issue is properly decided by the arbitrator.

In this case, the parties expressly agreed to conduct any arbitration "arising out of, or in connection" with the Agreements pursuant to the AAA Rules. Nowhere in the record do Appellants cite to the actual version of the AAA Rules applicable to this case. However, Appellees do not appear to dispute that the applicable AAA Rules provide, in pertinent part, that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." The interpretation of the above language in arbitration agreements is not an issue of first impression in New York.

First, we note that the general law in New York provides that "the question of arbitrability is an issue generally for judicial determination in the first instance[.]" *Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 45, 689 N.E.2d 884, 887 (N.Y. 1997) (citing *Matter of Primex Intl. Corp. v. Wal-Mart Stores*, 89 N.Y.2d 594, 657 N.Y.S.2d 385, 679 N.E.2d 624, 626 (N.Y. 1997)). The New York Court of Appeals, however, has recognized an exception that "recognizes, respects and enforces a commitment by the parties, nevertheless, to arbitrate even that issue when they 'clearly and unmistakably [so] provide[.]'" *Sacharow*, 689 N.E.2d at 887 (quoting *AT & T Techs. v. Commc'ns Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–1419, 89 L.Ed.2d 648 (1986)). Accordingly, the Court of Appeals directed courts to "examine and determine whether the parties here evinced

---

[6] In *Holzer v. Mondadori*, No. 12 CIV. 5234 NRB, 2013 WL 1104269 (S.D.N.Y. Mar. 14, 2013), the District Court for the Southern District of New York indicated that in determining "the question of who decides arbitrability," some courts "have been reluctant to apply a choice-of-law provision . . . , as it concerns 'the allocation of power between courts and arbitrators.'" *Id.* at *6 (quoting *FR 8 Singapore Pte. Ltd. v. Albacore Maritime Inc.*, 794 F.Supp.2d 449, 453 (S.D. N.Y. 2011)). Instead, these courts have applied only federal law. As discussed in detail *infra*, it appears that New York state courts have consistently applied federal law on this issue, so that there is no tangible distinction between the two. Accordingly, we will apply New York law to this issue in accordance with the parties' choice of law provision.

a 'clear and unmistakable' agreement to arbitrate arbitrability as part of their alternative dispute resolution choice."[7] *Sacharow*, 689 N.E.2d at 887.

Although the Court in *Sacharow* was not called upon to consider whether the AAA Rules at issue in this case evince a "clear and unmistakable" agreement to arbitrate arbitrability, other New York courts have considered this issue and answered in the affirmative. See *In re Application of R D Mgmt. Corp.*, 196 Misc. 2d 579, 766 N.Y.S.2d 304 (N.Y. Sup. Ct. 2003); *Life Receivables Trust v. Goshawk Syndicate 102 at Lloyd's*, 66 A.D.3d 495, 888 N.Y.S.2d 458 (N.Y. Sup. Ct. 2009), *aff'd*, 14 N.Y.3d 850, 927 N.E.2d 553 (N.Y. 2010). First, in *R D Management*, the parties entered into several contracts containing similarly worded arbitration provisions. These provisions obligated the parties to resolve "any dispute" by arbitration pursuant to the AAA Rules. *Id.* at 306. Although the contract did not expressly state that it was governed by the FAA, the Court concluded that the FAA came "into play" because the contract concerned interstate commerce. *Id.* The Court further concluded that the inclusion of the AAA rule expanding the jurisdiction of the arbitrator to include issues of arbitrability, as cited above, "grants the arbitrator the power to decide the scope of the arbitration clause." *Id.* at 307. According to the Court, such a provision "has been construed as a delegation of the issue of arbitrability to the arbitrator." *Id.* Although the Court recognized that New York law provides that "the arbitrability of a particular claim is ordinarily an issue for judicial determination," *Id.* (citing *Matter of Primex*, 679 N.E.2d at 626), the Court concluded that the inclusion of the AAA Rules manifested the parties' intent that "any questions regarding the arbitrability of the claims [asserted] must be resolved by the arbitration panel." *R D Mgmt. Corp.*, 766 N.Y.S.2d at 307.

The *R D Management* Court noted that its decision followed several United States District Court cases in cases likewise governed by the FAA. *Id.* at 305 (citing *Sleeper Farms v. Agway, Inc.*, 211 F Supp 2d 197 (D.Me 2002); *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677 (S.D. Fla. 2001), *aff'd.* 312 F.3d 1349 (11th Cir. 2002); *Prof'l Sports Tickets & Tours, Inc. v. Bridgeview Bank Grp.*, No. CIV. A. 01-991, 2001 WL 1090148, at *5 (E.D. Pa. Sept. 13, 2001)). Indeed, our research has revealed that federal courts considering arbitration contracts governed by the

---

[7] We note that the Federal Circuit has added an additional layer of judicial review over this question. In *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366 (Fed. Cir. 2006), the Federal Circuit held that after being satisfied that the parties "did clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator," the court should then "determine whether the assertion of arbitrability is 'wholly groundless.'" *Id.* at 1371 (quoting *Dream Theater, Inc. v. Dream Theater*, 124 Cal.App.4th 547, 21 Cal.Rptr.3d 322, 326 (Cal. 2004)). Neither New York state courts, nor the Second Circuit Court of Appeals have adopted the requirements set forth in *Qualcomm*. Additionally, the *Qualcomm* holding has never been adopted by the United States Supreme Court. Instead, it appears that only the Federal, Fourth, and Fifth Circuit courts have applied the "wholly groundless" rule to determine the arbitrability of a specific dispute. As such, we decline to apply the rule established in *Qualcomm* to this case.

FAA have consistently held that by incorporating the AAA Rules into an arbitration agreement, the parties clearly and unmistakably manifested an intent to allow the arbitrator to resolve all questions of arbitrability. *See Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005) ("We have held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."); *Fallo v. High–Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) ("Consequently, we conclude that the arbitration provision's incorporation of the AAA Rules . . . constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator."); *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the AAA Rules . . . into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."); *Haire v. Smith, Currie & Hancock LLP*, 925 F.Supp.2d 126, 132 (D.D.C. Cir. 2013) (holding that incorporation of AAA Rules is clear and unmistakable delegation of arbitrability and noting that "a recent D.C. Circuit opinion strongly suggests that the D.C. Circuit would view incorporation of the AAA Rules as satisfying the requisite standard").

New York courts reaffirmed the conclusion in *R D Management* in *Goshawk*. 888 N.Y.S.2d 458. In *Goshawk*, the Court was again faced with a contract concerning interstate commerce that provided that "[a]ll disputes and differences arising under or in connection with this [contract] . . . be referred to arbitration under the [AAA] Rules." *Id.* at 495. The Court concluded that:

> Although the question of arbitrability is generally an issue for judicial determination, when the parties' agreement specifically incorporates by reference the AAA Rules, which provide that "[t]he tribunal shall have the power to rule on its own jurisdiction, including objections with respect to the existence, scope or validity of the arbitration agreement," and employs language referring "all disputes" to arbitration, courts will "leave the question of arbitrability to the arbitrators[.]"

*Id.* at 496. Thus, the Court held that "the scope and validity of the arbitration agreement, necessarily including issues of arbitrability, are for the arbitration tribunal to determine." *Id.* The New York Court of Appeals later affirmed the Supreme Court's determination that "the scope and validity of the parties' arbitration agreement, including issues of arbitrability, are for the arbitration tribunal to determine[.]" *Life Receivables Trust v. Goshawk Syndicate*

20

*102 at Lloyd's*, 14 N.Y.3d 850, 851, 927 N.E.2d 553 (N.Y. 2010). Accordingly, it appears to be settled law in New York that by incorporating the AAA Rules into an agreement to arbitrate, the parties manifested a clear and unmistakable intent to have issues of arbitrability, including the scope and validity of an arbitration clause, decided by the arbitrator.

Here, the arbitration clause contained in the parties' contracts clearly indicates that the arbitration shall be conducted "in accordance with" the AAA Rules. There is no dispute that the applicable rules provide that issues of arbitrability, including questions regarding the "existence, scope, or validity of the arbitration agreement" are to be determined by the arbitrator. Thus, pursuant to the rules established in *R D Management* and *Goshawk* and affirmed by the New York Court of Appeals, the parties in this case clearly and unmistakably intended that any issues as to the scope of the arbitration agreement should be decided by the arbitrator. Accordingly, the trial court erred in considering this question.

## II. Unconscionability

We note that both parties' briefs raise an additional argument regarding the purported unconscionability of the arbitration agreement. The trial court's order again does not address this issue. However, nothing in the trial court's order expressly states or clearly implies a ruling on this issue. *See Smythe*, 401 S.W.3d at 608. Moreover, this argument is clearly contemplated in Appellants' second issue presented: whether the arbitration agreement should be enforced and Appellees compelled to arbitrate their claims. Generally, when the trial court fails to address an issue in the first instance, this Court will not consider the issue, but will instead remand for the trial court to make a determination in the first instance. *See, e.g.*, *Farmers Mut. of Tennessee v. Atkins*, No. E2011-01903-COA-R9-CV, 2012 WL 982998, at *4 (Tenn. Ct. App. March 21, 2012) (declining to consider a matter when no initial determination was made by the trial court); *Shaffer v. Memphis Airport Authority, Service Management Systems, Inc.*, No. W2012-00237-COA-R9-CV, 2013 WL 209309, at *4 (Tenn. Ct. App. Jan.18, 2013) ("In an interlocutory appeal, as well as in an appeal as of right, the appellate court considers only questions that were actually adjudicated by the trial court."); *Reid v. Reid*, 388 S.W.3d 292, 294 (Tenn. Ct. App. 2012) ("The jurisdiction of this Court is appellate only; we cannot hear proof and decide the merits of the parties' allegations in the first instance."); *In re Estate of Boykin*, 295 S .W.3d 632, 636 (Tenn. Ct. App. 2008) ("At the appellate level, we are limited in authority to the adjudication of issues that are presented and decided in the trial courts."); *Davidson v. Myers*, No. C.A. 152, 1990 WL 198906, at *1 (Tenn. Ct. App. Dec. 12, 1990) (remanding to the trial court to consider the issues of damages and specific performance, which had not been determined by the trial court). However, because this case involves arbitration, we must also keep in mind our goal to ensure "the expeditious disposition of an arbitration." *Smythe*, 401 S.W.3d at 609 (noting that the goal of both Tennessee arbitration law and the FAA is to "provide an efficient procedure when judicial assistance is necessary" and that judicial involvement should be kept

to a minimum to ensure that the goals of "speed, simplicity, and economy" inherent in the arbitration system can be met). Because it is our duty to ensure that disputes subject to arbitration are determined with speed, simplicity, and minimal judicial intervention, and this dispute must be resolved in order to fully adjudicate the issues raised by Appellants on appeal, we will proceed to consider this issue.

In both the prior proceedings and this Court, Appellees argued that the court should not compel arbitration because the arbitration agreement is unconscionable. Specifically, on appeal, Appellees urge this Court to refuse to enforce the arbitration agreement on the ground of unconscionability because: (1) the arbitration provision lacks mutuality, in that the arbitration provision allows Paychex, but not Appellees, to opt out of arbitration; (2) the arbitration provision is hidden in boilerplate language and fails to adequately describe its effect on Appellees' rights, remedies, and claims; and (3) the arbitration provision is so restrictive with regard to timeliness of claims and relief allowed that it "almost entirely insulate[s] Paychex from liability."

Although not entirely clear in their appellate brief, it appears that Appellants argue that this too should be decided by the arbitrator based upon the parties' delegation provision. We agree. In 2010 the United States Supreme Court addressed a similar issue in ***Rent-A-Center, West, Inc. v. Jackson***, 561 U.S. 63, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010).[8] In ***Rent-A-Center***, the plaintiff filed an employment discrimination lawsuit in federal district court against his former employer. ***Id.*** at 65. Prior to his employment, the employee signed a Mutual Agreement to Arbitrate Claims Agreement, which provided that "t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." ***Id.*** at 66. The employer filed a motion to compel arbitration, which motion the plaintiff opposed on the ground that the arbitration agreement in question was unconscionable. The District Court rejected the plaintiff's argument, finding that because the plaintiff claimed that the agreement as a whole was unconscionable, under the FAA, such question was to be decided by the arbitrator pursuant to the contract's delegation clause. The Court of Appeals for the Ninth Circuit reversed and held that where "a party challenges an arbitration agreement as unconscionable and, thus, asserts that he could not meaningfully assent to the agreement, the threshold question of unconscionability is for the court." ***Id.*** at 66–67.

The United States Supreme Court granted certiorari, and a majority of the Court reversed the Ninth Circuit's holding. First, the Supreme Court reiterated that the contract was governed by the FAA, as it concerned interstate commerce. ***Id.*** at 68. The Supreme Court

---

[8] Neither party cites ***Rent-A-Center*** in their appellate brief.

then discussed the effect of the delegation provision contained within the employment contract. According to the Court, the FAA operates to enforce a delegation provision "just as it does any other" arbitration agreement. *Id.* at 68–69. Finally, the Court held that because the delegation clause referred all issues of enforcement of the agreement to the arbitrator, only a challenge to the delegation clause of the parties' arbitration agreement could be heard by the court. *Id.* at 70–72.

To reach this holding, the United States Supreme Court divided validity challenges to arbitration agreements into two categories:

> "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." ***Buckeye*** [***Check Cashing Inc. v. Cardegna***], 546 U.S. [440,] at 444, 126 S.Ct. 1204 [(2006)]. In a line of cases neither party has asked us to overrule, we held that only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable. *See* ***Prima Paint Corp. v. Flood & Conklin Mfg. Co.***, 388 U.S. 395, 403–404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); ***Buckeye***, *supra*, at 444–446, 126 S.Ct. 1204; ***Preston v. Ferrer***, 552 U.S. 346, 353–354, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008).

***Rent-A-Ctr.***, 561 U.S. at 70 (footnote omitted). The Court explained its rationale for this rule:

> That is because § 2 [of the FAA], states that a "written provision" "to settle by arbitration a controversy" is "valid, irrevocable, and enforceable" without mention of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." ***Buckeye***, 546 U.S., at 445, 126 S.Ct. 1204; *see also id.*, at 447, 126 S.Ct. 1204 (the severability rule is based on § 2).

***Rent-A-Ctr.***, 561 U.S. at 70–71. Accordingly, the Court held that an agreement to arbitrate is severable from the underlying contract. ***Id.*** (citing ***Buckeye***, 546 U.S., at 445 (holding that this was a matter of "federal substantive law" that must be applied by both federal and state courts)).

Because of the severability of arbitration provisions from underlying contracts, the Court held that only challenges to the exact arbitration provision at issue were properly considered by the court. ***Rent-A-Ctr.***, 561 U.S. at 71. As the ***Rent-A-Center*** Court explained:

> But that agreements to arbitrate are severable does not mean that they are unassailable. If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4. In ***Prima Paint*** [***Corp. v. Conklin Mfg. Co***], for example, if the claim had been "fraud in the inducement of the arbitration clause itself," then the court would have considered it. [9] 388 U.S. [395,] 403–404, 87 S.Ct. 1801 (1967).

***Rent-A-Ctr.***, 561 U.S. at 71. Importantly, the Court required that the party challenge "the **precise** agreement to arbitrate at issue" in order to vest authority to decide the issue with the court rather than the arbitrator. ***Id.*** (emphasis added). In ***Rent-A-Center***, there were essentially two agreements: (1) the Mutual Agreement to Arbitrate Claims Agreement; and (2) the delegation clause of the arbitration agreement. Because the parties' arbitration agreement gave the arbitrator "exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement," the Rent-A-Center Court concluded that "unless [the plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4 [of the FAA], leaving any challenge to the validity of the Agreement as a whole for the arbitrator." ***Id.*** at 72–73. Because the plaintiff did not specifically challenge the delegation provision in opposing arbitration, the United States Supreme Court held that his claim that the arbitration agreement was unconscionable was an issue to be decided by the arbitrator. ***Id.*** at 73–74.

The rule established in ***Rent-A-Center*** has never been specifically applied by New York courts applying New York law.[10] Two factors lead this Court to believe that the ***Rent-***

---

[9] Instead, in ***Prima Paint***, the plaintiff argued that the contract as a whole was fraudulently induced. ***Prima Paint***, 388 U.S. at 402. The United States Supreme Court held that because the parties' agreement provided that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration" pursuant to the AAA Rules, that questions regarding the fraudulent inducement of the contract as a whole were properly decided by the arbitrator, rather than the court. ***Id.*** at 404–06.

[10] The only New York case to reference ***Rent-A-Center*** is ***Monarch Consulting, Inc. v. Nat'l Union Fire Ins.***

*A-Center* rule should apply in this case. First, as discussed in detail above, both New York cases involving delegation clauses in arbitration contracts have followed federal FAA jurisprudence, despite the fact that the United States Supreme Court has indicated that courts may apply ordinary state-law principles to contract formation issues. *First Options*, 514 U.S. at 944; *see also Goshawk*, 14 N.Y.3d at 851 (applying federal FAA law); *Goshawk*, 66 A.D.3d 495 (same); *R D Mgmt.*, 766 N.Y.S.2d 304 (same).

More importantly, the holding in *Rent-A-Center* rests on the doctrine that arbitration clauses are severable from the underlying agreements within which they are contained. *See Rent-A-Ctr.*, 561 U.S. at 70–71. The doctrine of severability constitutes federal substantive law that applies "regardless of whether the challenge is brought in federal or state court." *Buckeye*, 546 U.S. at 449. As explained by the New York Supreme Court:

> [I]n 2006 the Supreme Court held in *Buckeye Check Cashing, Inc. v. Cardegna* that "even in the context of state-law claims brought in state court, the FAA created a body of federal substantive law which applies in both state and federal courts and state law cannot bar enforcement." 546 U.S. 440, 1209 (2006) (internal citations omitted). While plaintiff has not raised the issue of whether state or federal law applies in this case, it is important to note that **this court must rule on this issue in accordance with the U.S. Supreme Court.**

*Cheng v. David Learner Assocs., Inc.*, 35 Misc. 3d 1238(A), 954 N.Y.S.2d 758 (N.Y. Sup. Ct. 2012) (emphasis added). Thus, even New York courts have held that with regard to issues involving the severability of agreements to arbitrate, federal substantive law controls. Because *Rent-A-Center* operates as an extension of the rule adopted in *Buckeye*, we must conclude that the rule adopted in *Rent-A-Center* applies to this case despite the parties' decision to apply New York law to their agreement. Accordingly, we turn to consider whether the unconscionability challenge in this case falls within the narrow category of challenges that may be adjudicated by the courts pursuant to the *Rent-A-Center* Opinion.

---

*Co. of Pittsburgh*, 123 A.D.3d 51, 993 N.Y.S.2d 275 (N.Y. 2014). *Monarch*, however, involves the question of whether an insurance company's failure to comply with California's insurance regulations renders the arbitration agreements unenforceable. *See Id.* at 70–72. The New York Supreme Court concluded that they did, regardless of "whether the insureds challenge the arbitration clause itself, or rather, whether they challenge the entire agreement." *Id.* at 72. The Court based its decision on the fact that federal law provides that state law is supreme in insurance regulation. *Id.* at 59 (citing 15 U.S.C. § 1011 ("Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.")). Because *Monarch* involved the application of California insurance regulations, which are governed solely by California law, it is not particularly persuasive in this case.

In this case, the arbitration agreements at issue clearly contain language providing that the arbitration will be conducted pursuant to the AAA Rules. Further, there is no dispute that the AAA Rules provide that the arbitrator, rather than the court, "shall have the power to rule on . . . any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." As previously discussed, we have concluded that, applying New York law, such a delegation provision "clearly and unmistakably" evinces the parties' intent to have gateway questions, such as the scope of arbitration, decided by the arbitrator. Under these circumstances, pursuant to *Rent-A-Center*, the only issue that may be decided by a court is the question of whether the "precise agreement at issue," i.e., the delegation provision, is unconscionable.

We note that while the contract in *Rent-A-Center* is analogous to the Agreements in this case, they are not identical. First, it must be noted that the underlying contract in *Rent-A-Center* was the arbitration agreement, rather than a commercial services agreement like in this case. Accordingly, while in *Rent-A-Center*, there were two agreements—the arbitration agreement and the delegation provision—in this case, there are three agreements: (1) the service agreement between Appellees and Paychex; (2) the arbitration provision; and (3) the delegation provision included in the agreement by virtue of the incorporation of the AAA rules. This complication certainly adds to the sentiment that we are applying a "Russian nesting dolls" aspect to severability of arbitration contracts. *See Rent-A-Ctr.*, 561 U.S. at 86 (Stevens, J., *dissenting*) (suggesting that the new layer of severability is "something akin to Russian nesting dolls"). *Schumacher Homes of Circleville, Inc. v. Spencer*, ___ S.E.2d ___, No. 14-0441, 2015 WL 1880234, at *7 (W. Va. Apr. 24, 2015) (echoing the *Rent-A-Center* dissent's opinion). However, the majority in *Rent-A-Center* holds that the fact that the arbitration agreement at issue was not contained within a contract "unrelated to arbitration . . . makes no difference" to the analysis. *Id.* at 72. Accordingly, we are constrained to follow the precedent set by the Supreme Court in *Rent-A-Center* even where, as here, the arbitration provision is contained within a contract unrelated to arbitration. *See Schumacher Homes*, 2015 WL 1880234, at *7 (criticizing the rule established in *Rent-A-Center* as "absurd," but ultimately holding "this is the law").

Another difference between this case and *Rent-A-Center* involves the language of the delegation clauses at issue. In *Rent-A-Center*, the Supreme Court held that the question of whether the arbitration agreement was unconscionable had been delegated to the arbitrator, relying on the contract language that "any dispute relating to the . . . **enforceability** . . . of this Agreement" would be referred to arbitration. *Rent-A-Ctr.*, 561 U.S. at 72 (emphasis added). In this case, however, the language of the delegation provision does not expressly refer issues of enforceability to the arbitrator but instead refers issues regarding the "existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." We note, however, that the *Rent-A-Center* Court appears to use the terms

26

"enforceability" and "validity" interchangeably. For example, while the ***Rent-A-Center*** parties' contract clearly uses the term enforceability, the ***Rent-A-Center*** Court concludes that a challenge to "validity" must consider "the precise agreement to arbitrate at issue." ***Rent-A-Ctr.***, 561 U.S. at 70. Accordingly, we conclude that the parties' decision to delegate challenges to the validity of the agreement at issue in this case to the arbitrator is sufficient to bring this case within the ambit of ***Rent-A-Center***.

Based on the forgoing, we conclude that ***Rent-A-Center*** is controlling law in this case. Accordingly, because of the delegation clause in the parties' arbitration agreement, only a specific challenge to the unconscionability of the delegation clause may be heard by the court. Any challenges to the underlying services agreement or the arbitration agreement as a whole have been delegated to the arbitrator. After a thorough review of the record, we must conclude that Appellees have failed to challenge the delegation provision contained in their arbitration agreement. As previously discussed, the Appellees argued that the arbitration agreement was unconscionable, on grounds of lack of mutuality, surprise, and unfair advantage to Paychex. None of these allegations directly concern the delegation provision; indeed, nothing in Appellees' response in opposition to the motion to compel or their brief to this Court specifically takes issue with the delegation provision. Under the circumstances, applying the rule in ***Rent-A-Center***, we must conclude that Appellees' unconscionability argument does not concern the "precise agreement at issue." ***Rent-A-Ctr.***, 561 U.S. at 70. Therefore, it is insufficient to place the issue of unconscionability before the trial court. Instead, any argument concerning the unconscionability of the arbitration agreement is for the arbitrator to decide.

### III. Claims against Mr. Cunningham

Appellees next argue that any claims against Mr. Cunningham should not be subject to arbitration pursuant to the parties' agreement because he was not a signatory to the agreement. Again, the trial court made no express or implied ruling on this issue, but we will consider it in light of the Tennessee Supreme Court's stated goals regarding judicial intervention in disputes governed by arbitration agreements. *See* ***Smythe***, 401 S.W.3d at 608. Once more, this Court must first determine whether this dispute is properly decided by the court or by the arbitrator. Fortunately, both New York state and federal courts have considered this issue and can offer guidance to this Court in our determination.

In ***Merrill Lynch International Finance, Inc. v. Donaldson***, 27 Misc. 3d 391, 895 N.Y.S.2d 698 (N.Y. Sup. Ct. 2010), a similar issue was presented involving whether a company "may avoid arbitration because it was not a signatory to the arbitration agreement." ***Id.*** at 702. According to the Court:

27

Normally, "a court will not order a party to submit to arbitration absent evidence of that party's unequivocal intent to arbitrate the relevant dispute and unless the dispute falls clearly within that class of claims which the parties agreed to refer to arbitration" (*Primavera Labs., Inc. v. Avon Prods.*, *Inc.*, 297 A.D.2d 505, 505, 747 N.Y.S.2d 16 [2002] [internal quotation marks and citations omitted]). However, the Court of Appeals recognizes that "in certain limited circumstances the need to impute the intent to a non-signatory" is appropriate (*TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339, 680 N.Y.S.2d 891, 703 N.E.2d 749 [1998]). As well, consent to arbitration has been inferred where the nature of the relationship between a signatory and non-signatory indicates that the agreement to arbitrate should be extended in the interest of fairness (*Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276, 280–281 [2d Cir. 2003]).

*Donaldson*, 895 N.Y.S.2d at 702.

The Court outlined five circumstances in which "a non-signatory to an agreement may nevertheless be bound": "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/"alter ego"; and (5) estoppel[.]" *Id.* at 702–03 (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). The *Donaldson* Court was particularly concerned with the estoppel circumstance, noting that estoppel may be found "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted conduct by both the non-signatory and the other signatory to the contract." *Id.* at 703 (citing *Denney v. BDO Seidman, LLP*, 412 F.3d 58, 70–71 (2d Cir. 2005)). Citing the Second Circuit Court of Appeals, the Court opined:

"We have previously indicated that signatories to an arbitration agreement can be compelled to arbitrate their claims with a non-signatory where "a careful review of the relationship among the parties, the contracts they signed . . . , and the issues that had arisen 'among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estoped party has signed.'" *JLM Industries v. Stolt-Nielsen S.A.*, 387 F.3d 163, 177 (2d Cir. 2004) (quoting *Choctaw Generation Ltd. Partnership v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001)); *see also Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 209 (2d Cir. 2005) ("A useful benchmark for relational sufficiency can be found in our estoppel decision in *Choctaw* . . . where we held that the

28

signatory to an arbitration agreement is estopped from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." (internal quotation marks and citation marks omitted))."

*Donaldson*, 895 N.Y.S.2d at 703 (quoting *Denney*, 412 F.3d at 70). Because the *Donaldson* Court concluded that there was "a close and connected relationship" between the signatory and the non-signatory, to "justif[y] invocation of the doctrine of equitable estoppel," the Court ruled that the non-signatory was obligated to arbitrate. *Id.*

In reaching its decision, the *Donaldson* Court relied on two Second Circuit Court of Appeals cases, *Denney*, as discussed in detail above, and *Contec*. Analogously to *Donaldson*, the *Contec* Court was required to determine whether a non-signatory could enforce an agreement to arbitrate against a signatory. *Contec*, 398 F.3d at 207. The Second Circuit Court of Appeals, however, considered an additional issue: whether a third-party's "ability as a non-signatory to enforce the arbitration clause is an issue pertaining to the 'existence, scope or validity of the arbitration agreement'" between the signatories to the arbitration agreement. *Contec*, 398 F.3d at 208–09. Like this Court, the *Contec* Court noted that while the agreement at issue was governed by New York law, New York law "follows the same standard as federal law with respect to who determines arbitrability." *Id.* at 208 n.1.

The first question, of course, was whether a non-signatory could compel a signatory to arbitrate the dispute at issue. As the Court explained:

> As an initial matter, we recognize that just because a signatory has agreed to arbitrate issues of arbitrability with another party does not mean that it must arbitrate with any non-signatory. **In order to decide whether arbitration of arbitrability is appropriate, a court must first determine whether the parties have a sufficient relationship to each other and to the rights created under the agreement.** *See First Options*, 514 U.S. at 944–45, 115 S.Ct. 1920 (discussing the necessity of threshold determination by courts before referring issues of arbitrability to arbitrators). A useful benchmark for relational sufficiency can be found in our estoppel decision in *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, where we held that the signatory to an arbitration agreement "is estopped from avoiding arbitration with a non-signatory 'when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has

signed.'" 271 F.3d 403, 404 (2d Cir. 2001)(quoting *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l Inc.*, 198 F.3d 88, 98 (2d Cir. 1999)). In *Choctaw*, we summarized the factors laid out in *Smith/Enron* as "the relationship among the parties, the contracts they signed (or did not), and the issues that ha[ve] arisen." *Id.* at 406.

*Contec*, 398 F.3d at 209 (emphasis added). Based upon these rules, the *Contec* Court concluded that there was a sufficient relationship between the parties to allow the non-signatory to enforce the arbitration agreement against the signatory.

The above determination, however, did not end the inquiry. Instead, the Court next considered that the issue of whether the parties' delegation to the arbitrator of all disputes concerning the "existence, scope or validity" of the agreement encompassed a dispute concerning whether a non-signatory was entitled to enforce the arbitration agreement. The Court concluded that the non-signatory's right to enforce the arbitration agreement was a matter concerning the "existence, scope or validity" of the agreement that had been expressly delegated to the arbitrator. *Id.* at 210–211 (citing *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473–74 (1st Cir. 1989)).

As we perceive it, the *Contec* decision indicates that where the arbitration agreement at issue contains a broad delegation clause like the one at issue in this case, only the arbitrator is permitted to consider disputes regarding a non-signatory's right to enforce the arbitration agreement against a signatory. However, as a threshold matter, the court, rather than the arbitrator, must conduct a preliminary inquiry into "whether a sufficient relationship exist[s] between [the parties to the dispute] to compel arbitration even if . . . the arbitrator were to determine the dispute was not arbitrable." *Contec*, 398 F.3d at 209.

The question of whether a significant relationship exists between Appellees, Paychex, and Mr. Cunningham must be determined by considering whether "the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed," which includes consideration of the relationships among the parties, the contracts, and the issues that have arisen. *Id.* Again, the trial court did not specifically rule on this issue, either expressly or implicitly. Although we could certainly remand this issue for a determination by the trial court, several factors lead this Court to conclude that this issue is ripe for a determination. First, we are, as always, cognizant of our directive to resolve arbitration disputes swiftly and efficiently. *See Smythe*, 401 S.W.3d at 608. Next, we note that many of the relevant cases on this issue have determined the issue without the need for a remand to the trial court. *See Contec*, 398 F.3d at 211; *Astra Oil*, 344 F.3d at 282; *Choctaw*, 271 F.3d at 407–09; *Smith/Enron*, 198 F.3d at 98; *Apollo*, 886 F.2d at 473–74.

The Second Circuit Opinion in *JLM Indus., Inc. v. Stolt-Nielson S.A.*, 387 F.3d 163 (2d Cir. 2004), is particularly helpful on this issue. In *JLM*, certain non-signatory defendants sought to compel the plaintiff-signatory to arbitration. The non-signatory defendants had not signed all of the contracts at issue; instead some of their subsidiaries had signed the agreements containing the arbitration provisions. *Id.* at 177. Nevertheless, after a "careful review" of the relationships and issues presented, the Second Circuit ruled that the signatory was bound to arbitrate even against the non-signatories. *Id.* As an initial matter, the Court looked to other federal cases to provide guidance on what level of interrelationship was sufficient to show intertwinement:

> [I]n *Choctaw*, we found that where the merits of an issue between the parties was bound up with a contract binding one party and containing an arbitration clause, 271 F.3d at 407, the "tight relatedness of the parties, contracts and controversies" was sufficient to estop the bound party from avoiding arbitration, *id.* at 406. Similarly, in *Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration International, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999), we held that the party attempting to resist arbitration was estopped from doing so because it had treated arguably non-signatory companies and their signatory assignees "as a single unit" in its complaint in a related lawsuit. Most recently, in *Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276, 281 (2d Cir. 2003), we found that petitioner Astra could hold respondent Rover to an arbitration clause to which Astra's affiliate AOT was also a signatory because of the "close corporate and operational relationship between Astra and AOT," because the claims Astra brought against Rover arose under the agreement binding AOT and Rover to arbitration, and because in various respects Rover had treated Astra as a party to the agreement. *See also Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir.1995) (surveying cases in other circuits in which signatories have been bound to arbitrate "because of the close relationship between the entities involved . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations" (internal quotation marks and citation omitted)).

*JLM*, 387 F.3d at 177−178.

The *JLM* Court recognized that the inquiry involved factual issues, but concluded that the record clearly showed that the issues were sufficiently intertwined to compel arbitration:

> While we have cautioned that this estoppel inquiry is fact-specific, *Smith/Enron*, 198 F.3d at 97, and have had no occasion to specify the minimum quantum of "intertwined-ness" required to support a finding of estoppel, *Astra Oil*, 344 F.3d at 279, we have no difficulty concluding that it is present here. The questions the [non-signatories] seek to arbitrate are undeniably intertwined with the [contracts at issue], since as we have already noted it is the fact of [the plaintiff-signatories'] entry into the [contracts at issue] containing allegedly inflated price terms that gives rise to the claimed injury. *See Choctaw*, 271 F.3d at 407 (estopping the signatory where the merits of the dispute the non-signatory seeks to arbitrate are "bound up with" and "linked textually to" the terms of the contract that includes the arbitration clause); *see also MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (holding that a signatory may be estopped "[w]hen each of a signatory's claims against a non-signatory makes reference to or presumes the existence of the written agreement") (internal quotation marks omitted). Nor can it be denied that [the plaintiff-signatory] implicitly recognizes the "close relationship among the parties . . . and controversies," or that it has treated the [non-signatories] "as if [they] were ... signator[ies] to the [contracts]." *Astra Oil*, 344 F.3d at 280. As the [non-signatories] note, the amended complaint "repeatedly alleges that, whatever corporate entities happened to sign the [contracts], [the plaintiff-signatory] was purchasing shipping services directly from the parents and was harmed by the allegedly inflated prices charged by those parents . . . ." *See Smith/Enron*, 198 F.3d at 97, 98 (estopping signatory where party seeking to avoid arbitration "treated . . . [the] related companies as though they were interchangeable" and as "a single unit" in its complaint in related litigation).

*JLM*, 387 F.3d at 177–178.

The same is true in this case. First, we note that the arbitration provision at issue in this case indicates that "any dispute" in connection with the Agreement would be referred to arbitration. Accordingly, while the plain language of the arbitration agreement does not expressly state that non-signatories may compel signatories to arbitrate, the arbitration

agreement does not limit arbitration only to parties to the Agreements. *See **McPheeters v. McGinn, Smith & Co.***, 953 F.2d 771, 774 (2d Cir. 1992) (rejecting a non-signatory's request to compel arbitration where the arbitration agreement was expressly limited only to disputes involving the parties to the contract).

From our review of Appellees' complaint, the allegations made by the Appellees against Mr. Cunningham are clearly intertwined with the allegations against Paychex. First, we note that there is no dispute that at all times relevant to this dispute Mr. Cunningham was an employee of Paychex. Although Mr. Cunningham is named separately in the Appellees' complaint, the complaint clearly alleges that Paychex should be held vicariously liable for the conduct of Mr. Cunningham. In fact, Appellees allege that the actions of Mr. Cunningham were committed in the scope of his employment. As we perceive it, Appellees' argument rests on its allegation that Mr. Cunningham's negligent or intentional conduct allowed Ms. Burk to manipulate the Paychex system to defraud the Appellees. Clearly then, the conduct and knowledge of Mr. Cunningham will be highly relevant in determining the liability of Paychex; disputes regarding Mr. Cunningham are therefore "bound up with" the claims against Paychex. *See **Choctaw***, 271 F.3d at 407.

Further, the claims against both Paychex and Mr. Cunningham appear to presume the existence of a written agreement between the parties, in that the fraud alleged was only possible due to the contractual relationship between Appellees and Paychex. *See **Franklin***, 177 F.3d at 947. Appellees also fail to specify if any requested damages would be attributable to Mr. Cunningham independent of Paychex. Accordingly, the complaint, at times, appears to treat the liability of Paychex and Mr. Cunningham as a "single unit[.]" *See **Smith/Enron***, 198 F.3d at 97, 98. Under these circumstances, we conclude that the claims alleged in Appellees' complaint represent a "tight relatedness" of the type that is sufficient to allow any dispute regarding the arbitrability of claims against Mr. Cunningham to be referred the arbitrator.

## Conclusion

The judgment of the Chancery Court of Shelby Court is reversed. This cause shall be remanded to the trial court for all further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellees, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

33